[Civ. No. 8216.   Third Dist.   May 21, 1953.]

UNIVERSAL ENGINEERING COMPANY, LTD. (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION, Respondent; and Consolidated Cases.

Pillsbury, Madison & Sutro, Frederick H. Hawkins and Albert J. Sholts for Appellant.

Edmund G. Brown, Attorney General, James E. Sabine and Irving H. Perluss, Deputy Attorneys General, for Respondent.

SCHOTTKY, J.—Plaintiff above named, and Security Engineering Company, Inc., a corporation, Globe Oil Tools Company, a corporation, Hughes Tool Company, a corporation, Byron Jackson Company, a corporation, Chiksan Oil Tool Company. Ltd., a corporation, The Republic Supply Company of California, a corporation, Grant Oil Tool Company, a corporation, Howard Supply Company, a corporation, and Reed Roller Bit Company, a corporation, brought separate suits for the recovery of sales tax paid to defendant under protest on transactions involving the leasing or renting of various types of oil well drilling tools. The complaints alleged the

filing of sales tax returns with the State Board of Equalization for various calendar quarters, and the payment of portions of the tax under protest on the ground that the sums received from the leasing of oil well drilling equipment during the various periods in question were not properly subject to sales tax because said leases were bona fide lease and service agreements and not leases and agreements in lieu of sales.

Defendant answered each complaint, denying the allegations that the lease and service agreements in question were bona fide lease and service agreements and not leases and agreements in lieu of sales, and denying that any sum was due from defendant to plaintiffs.

The various cases were consolidated for trial and were decided by the trial court by a single set of findings of fact and conclusions of law and a single judgment. No evidence, either oral or documentary other than a written stipulation of facts, was introduced at the trial of the consolidated cases, and the findings of fact signed by the trial court incorporated this stipulation and found that all facts stated therein were true. By paragraph XI of the stipulation the defendant stipulated that plaintiffs have judgment against defendant for the amount of sales tax paid during the periods involved on the rental of all types of bits involved in the litigation other than the type of bit known as a "rock bit." The trial court rendered judgment in favor of defendant with respect to the taxes paid on the rental of rock bits, and pursuant to the stipulation plaintiff had judgment against defendant for the amount of taxes paid on the rentals on all types of bits other than rock bits.

Plaintiffs have appealed from that portion of the judgment denying them recovery for the sales taxes paid under protest on the leases and rentals of rock bits, and the sole issue upon this appeal is whether the gross rentals on rock bits furnished by plaintiffs to oil well drillers in the manner set forth in the stipulation of facts are subject to California sales or use tax. The record on appeal consists of an agreed statement of appellants and respondent in lieu of clerk's and reporter's transcripts on appeal.

The factual situation as stipulated to by the parties is substantially as follows:

Plaintiffs are manufacturers of various types of oil well drilling equipment. Under lease and service agreements plaintiffs have furnished oil well drilling equipment to various oil well drillers in the state of California, receiving in return

gross rent. For the taxable periods from July 1, 1938, to May 1, 1939, the plaintiffs paid, under protest, sales taxes to defendant on the total rental price received by them on rock bits, disc bits, reamers, underreamers, differential bits, conventional wire barrels and bits, and wire line core barrels and bits. These taxes were paid in accordance with what is now title 18, section 2043, California Administrative Code, which so reads:

*"Oil Well Drilling Tools.*—If oil well drilling tools are ordinarily substantially consumed during one run, or under one lease agreement, the charges therefor are taxable, even though designated as rentals. Thus, the tax applies to charges for tools such as roller cutters for under reamers, roller cutters for straight reamers and roller or cone type rock bit cutters. If no segregation is made between the charges for oil well drilling tools which are so consumed, and rental charges for tools which are not so consumed, the entire charges are taxable." (Effective August 1, 1933. Adopted as of January 1, 1945, as a restatement of previous rulings.)

A rock bit is a type of roller bit furnished by the plaintiffs to oil well drillers for the purpose of drilling through rock formations. It consists of a cylindrical metal shank or body with rotating metal cutters mounted on shafts projecting from the base of the shank or body. These metal cutters rotate with the aid of bearings. Teeth are milled and built up with hard, wear-resistant, facing metal on the exterior of the cutters. The cutters of a rock bit represent approximately 50 per cent of the total cost of the bit. The cutter teeth and bearings are the only portion of a bit subject to appreciable wear during one lease agreement. Ordinarily, the cutter teeth become dull after one run, and the bit is returned to the lessor. After the cutter teeth become dull the rock bits could be repaired for reuse in a second run by retipping with hard, wear-resistant, facing metal and reshaping the new teeth. The cost of repairing is inexpensive, less than half the manufacturing cost. As a practical matter, however, with minor exceptions, none of the manufacturers reused any part of the rock bits after the cutter teeth became dull. Such bits rather were used by the plaintiffs for research and development purposes, or were sold to reliable steel or salvage companies, thus insuring that none of their used bits would be available to others for refacing and redistributing to drillers.

The rental method of doing business by the manufacturers of oil well drilling equipment was established prior to the

enactment of the California Retail Sales Tax Act in 1933. The reason for the adoption of the rental system was to insure the return of the used bits, and to prevent the retipping of the bits by drilling crews. The retipping done by drilling crews was faulty and this led to widespread dissatisfaction on the part of drillers who failed to distinguish between the performance of new bits and those retipped by their crews. Consequently lists of rental prices were made available to drillers. The price lists notified the lessee that the bits were rented and not sold. When drillers desired drilling tools, orders were placed with plaintiffs indicating the type of tool and the required place of delivery. The ordered tools were delivered by plaintiffs along with "bit breakers," or wrenches for use in connecting and disconnecting the tools and the drill pipe. The rental price charged by the plaintiff covered the use of these bit breakers, and the delivery of the tools. At the time of delivery a slip was filled out and signed by a representative of the plaintiff renting the tools and by a representative of the lessee.

At irregular intervals plaintiffs picked up dulled tools or tools no longer needed by its lessee. No charge was made for this pickup in addition to the rental charge. Also, at this time a "pickup" slip was filled out and signed by a representative of the plaintiffs and a representative of the lessee. After the pickup, invoices for rental charges were submitted to the lessee, and the charge was paid in a lump sum, not periodically. The rental charged was computed on the number of dulled cutters. This charge covered the entire use of all tools furnished plus plaintiffs' other services, and exceeded the cost of a rock bit to the manufacturer. For some of the tools, in addition to dulled cutter charges, rentals were measured by a flat daily rental, or by other factors. In the event that a tool was lost or rendered valueless, the practice of making an additional charge to the drillers varied with the type of tool. No charge was made in such a case where the tool was a rock bit. Of the other tools once herein involved, an additional charge was made for each one lost or rendered valueless, except in the case of a disc bit.

Subdivisions (b) and (c) of section 2 of the California Retail Sales Tax Act of 1933, as amended in 1935, provide as follows:

"(b) 'Sale' means any transfer of title or possession, or both, exchange, barter, lease or rental, conditional or other-

wise, in any manner or by any means whatsoever, of tangible personal property, for a consideration, . . .

"(c) . . . 'lease,' and 'rental' as used in subdivision (b) of this section shall mean and include only such transactions as the board, upon investigation, finds to be in lieu of sales as defined in subdivision (b) of this section without the words 'lease or rental.' " (Stats. 1935, ch. 357, pp. 1256-1257.)

This statute has been amended several times since the 1935 amendment. It is now codified as section 6006(a) of the Revenue and Taxation Code and reads as follows:

" 'Sale' means and includes:

"(a) Any transfer of title or possession, exchange, barter, lease, or rental, conditional or otherwise, in any manner or any means whatsoever, of tangible personal property for a consideration. 'Transfer of possession,' 'lease,' or 'rental' includes only transactions found by the board to be in lieu of a transfer of title, exchange, or barter."

The trial court concluded: "That plaintiffs' 'leases' and 'rentals' of rock bits were transactions 'in lieu of sales' within the meaning of subsections (b) and (c) of section 2 of the California Retail Sales Tax Act of 1933 (now Cal. Rev. & Tax. Code, § 6006(a)), and the gross receipts derived by plaintiffs from such transactions properly were subject to sales tax."

In their argument for a reversal of the judgment appellants contend that the rentals in question are not taxable sales whether this question be determined by applying the statutory "in lieu of sales" test or the board's "substantial consumption" test.

Appellants first argue that, properly applied, the respondent board's "substantial consumption test" does not convert the rentals in question to taxable sales because the tools which are rented are not substantially consumed. Appellants state:

"As shown by the stipulation, the cutters of the rock bits represented about 50 per cent of the total cost of the bits, and these cutters, along with the bearings, were the only portion of the bits subject to appreciable wear during one lease agreement (Agreed Statement, p. 16, lines 20-23). Furthermore, the bits 'could be repaired for reuse in a second run by refacing the dulled cutter teeth with hard, wear-resistant, facing metal and shaping the new teeth in the same way the original teeth were shaped' (Agreed Statement, p. 17, lines 1-4).

"These rock bits could be repaired at a cost less than the cost of the manufacture of new bits (Agreed Statement, p. 17, lines 4-5). Such repair would increase the useful life of the bits one hundred per cent (Agreed Statement, p. 16, line 25—p. 17, line 4).

. . . . . . . . . . . . . .

"In view of these facts, it appears that within the limits of any reasonable interpretation of the words 'substantially consumed,' these bits cannot be said to be so consumed."

Respondent in reply argues that here the rock bits were "substantially consumed" because there was a substantial reduction in the useful life of the rock bits unless they were rebuilt and such rebuilding never took place as they were never reused. It points out that there was full utilization of the tools by the lessee and that the effective life of the tools was but one "lease" or rental; that no additional charge was made if the tool was lost; the price was paid in one amount and not periodically; and the charge exceeded the cost of the tool to the manufacturer.

■ The words "substantially" and "consumed" as used in statutory provisions of the kind under consideration are not technical words having a peculiar meaning in law, but are words in common use and must be given their plain, ordinary meaning. (47 Am.Jur., Sales and Use Taxes, § 25.) "Consumed" means "used up." (Webster's New Inter. Dict.) "Substantially" means considerably, essentially or materially. ■ We believe that a reasonable and proper construction of the words "substantially consumed" is essentially or materially used up, and under the facts of the instant case the rock bits were "substantially consumed" during one run or under the lease agreement. We do not believe that "substantial consumption" means "complete consumption."

It is evident that respondent board in the instant case used the "substantial consumption" test in determining that the so-called "leases and rentals" here involved were "in lieu of sales" and that the trial court in arriving at its conclusion upon the facts appearing in the record used the same test. This test was formulated by respondent board and adopted as an administrative ruling in 1933. It appears in title 18, section 2043, of the California Administrative Code, and reads in part as follows: "If oil well drilling tools are ordinarily substantially consumed during one run, or under one lease agreement, the charges therefor are taxable, even though designated as rentals."

We have hereinbefore set forth subdivisions (b) and (c) of section 2 of the California Retail Sales Tax Act of 1933, as amended in 1935, and have pointed out that it was thereafter amended several times and finally codified as section 6006(a) of the Revenue and Taxation Code. These amendments were all since the adoption of the "substantial consumption" test ruling above quoted (Cal. Admin. Code, tit. 18, § 2043).

We may take judicial notice of the fact that in the formulating and enacting of legislation the Legislature for many years has had the assistance and advice of a well trained and highly efficient legislative counsel bureau and that it was therefore aware of the "substantial consumption" test ruling.

It has been held that where an administrative officer or board has adopted a regulation defining certain transactions as coming within the scope of a sales tax statute, and the Legislature subsequently reenacts the statute without amendment in this regard, the reenactment amounts to a legislative confirmation of the prior existing rules of interpretation. 47 American Jurisprudence, Sales and Use Taxes; *El Dorado Oil Works* v. *McColgan*, 34 Cal.2d 731, 739 [215 P.2d 4]; *Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918 [156 P.2d 1], and cases cited therein. In resolving a question as to the import of a statute, a court attaches probative weight to the administrative agency's conclusion as to the meaning of the law, and a court will not ordinarily adopt another construction unless the determination of the agency or board is shown to have been clearly erroneous or unauthorized. 10 California Jurisprudence 10-Year Supplement, Taxation, § 427, p. 533; *Coca-Cola Co.* v. *State Board of Equalization, supra.*

We believe that the "substantial consumption" test is not only a reasonable one for determining what "leases and rentals" are "in lieu of sales" but that it has in effect received the approval of the Legislature.

Appellants contend further than the rentals of the rock bits in question were bona fide rentals and were not "rentals in lieu of sales," "because the plaintiffs had legitimate business reasons for requiring the return of used bits, that is to prevent their faulty repair by drillers and to permit their inspection and improvement by the manufacturers." However, as we view the matter, it is difficult to understand what the Legislature meant by the words, " 'Transfer of possession,' 'lease,' or 'rental' includes only transactions found

by the board to be in lieu of a transfer of title, exchange or barter,'' if it did not mean to include transactions of the nature here involved. It may be true, as appellants state, that this so-called rental method of doing business by the manufacturers of oil well drilling equipment was established prior to the enactment of the California Retail Sales Act of 1933, and that it cannot be said that appellants adopted this method of doing business in order to evade the sales tax, but we believe that this so-called rental method of doing business is one of the types of transactions that the Legislature meant to classify as a rental in lieu of sale. It is clear to us that appellants for reasons that were sufficient to them chose to dispose of and market their product in this manner, and that to permit them to escape the sales tax under all of the circumstances hereinbefore set forth, would be a discrimination in their favor which was not intended by the Legislature. For there was full utilization of the rock bits by the lessees; the effective life of the bits was but one ''rental'' or lease; no additional charge was made if the bit was lost; the price was paid in one amount and not periodically; and the charge exceeded the cost of the bit to the manufacturer. These facts, together with the other facts and circumstances hereinbefore detailed, fully justified the respondent Board of Equalization in determining that as to the rock bits here involved the so-called lease was not a true lease or rental but was a lease or rental ''in lieu of a transfer of title.'' This determination by respondent board was a determination of fact and we cannot agree with appellants that such a determination could not reasonably be made upon the facts appearing in the record.

In view of the foregoing we are satisfied that the court correctly determined that plaintiffs' lease and rentals of ''rock-bits'' were transactions ''in lieu of sales'' within the meaning of subdivisions (b) and (c) of section 2 of the California Retail Sales Tax Act of 1933, as amended in 1935 (now Cal. Rev. & Tax. Code, § 6006(a)), and that the gross receipts derived from such transactions properly were subject to sales tax.

The judgment is affirmed.

Van Dyke, P. J., and Peek, J., concurred.