[Civ. No. 5487. Fourth Dist. Aug. 22, 1957.]

RALPH W. CHAPMAN, Respondent, v. DIVISION OF REAL ESTATE OF THE STATE OF CALIFORNIA et al., Appellants.

Edmund G. Brown, Attorney General, and Lee B. Stanton, Deputy Attorney General, for Appellants.

Ben W. Hamrick, Stickney & Stickney and Edward Strop for Respondent.

MUSSELL, J.—This is an action for declaratory relief and to obtain an injunction prohibiting the Division of Real Estate of the State of California and D. D. Watson (F. W. Griesinger, substituted), Real Estate Commissioner, from taking any further action in proceedings now pending before the Division of Real Estate involving the sale by petitioner and his associates of approximately 2,000 lots in an undeveloped residential subdivision, originally known as Tract Number 1317, East San Diego Villa Heights in San Diego County.

The trial court rendered judgment declaring that the Subdivision Law, Business and Professions Code, sections 11000 to 11021, applies only to subdivisions created subsequent to the effective date of the Real Estate Law adopted in 1933; that insofar as section 2796 of the rules and regulations of the Real Estate Commissioner, title 10, chapter VI, article 12 of the California Administrative Code, purports to give the Real Estate Commissioner jurisdiction over proposed sales of lots

in subdivisions created prior to August 11, 1933, by the owner of said lots who is neither the original owner, original developer, original subdivider or agent for any thereof, said section is declared to be unconstitutional and not binding upon the plaintiff in this action; that the appellants have no jurisdiction over the proposed sale of lots in the tract involved. Appellants were enjoined and prohibited from taking any further proceedings or making any further orders affecting the property involved. Appellants Division of Real Estate and the commissioner appeal from this judgment.

The facts as stated in the partial agreed statement of facts are substantially as follows:

Plaintiff, Sidney B. Chapman, Arthur E. Chapman and C. Paul Sisson are the partners of a partnership known as Dictionary Hill Avocado Groves, and as such are the beneficial owners of certain lots in East San Diego Villa Heights, a subdivision in the county of San Diego, State of California, legal title to which is now held of record in trust by Security Title Insurance Company, as trustee. That Ben F. Moore and Ed Fackler, Jr., are real estate brokers duly licensed as such under the laws of California and are presently engaged in a program of selling lots in said tract on behalf of said trustee and the beneficial owners.

That plaintiff and each of the other parties named in the preceding paragraphs have been served with copies of orders to show cause, statements of issues and a notice of hearing on said orders to show cause and statements of issues, notifying plaintiff and each of said parties that a hearing would be had by D. D. Watson, Real Estate Commissioner, before the Division of Real Estate of the State of California at the District Court of Appeals Courtroom, 620 Ash Street on the 21st day of May, 1956, at 2 o'clock p. m. for the purpose of ordering the prohibition of further sales of lots in said subdivision upon the ground that such sales are in violation of the Subdivision Law (Bus. & Prof. Code, §§ 11019 and 11020). That pursuant to said orders to show cause and notice of hearing, plaintiff has filed with said Division of Real Estate his notices of defense and requesting a hearing of said proceeding. That plaintiff is a party beneficially interested in this proceeding and the names of all other parties interested or who will be affected by this petition and complaint are: Plaintiff, Respondent herein, and Sidney B. Chapman, Arthur E. Chapman, C. Paul Sisson, Security Title Insurance Company, Ben F. Moore and Ed Fackler, Jr., respondents

named in the proceeding before the Division of Real Estate.

That the real property involved in this action constitutes approximately 340 acres of unimproved land known as "East San Diego Villa Heights." Said land was originally owned and subdivided by Title Insurance and Trust Company, a California Corporation. On February 21, 1911, a subdivision map of said property, being Map Number 1317, containing all of said land and showing 2,568 lots, was filed in the office of the county recorder of San Diego County, all in accordance and in compliance with the laws then existing and in effect. This subdivision map was prepared without reference to the topography of the land and the streets and roads on said tract were laid out in a rectangular grid type of map without regard to the mountainous terrain and ravines in the area.

That the original owner and subdivider, Title Insurance and Trust Company, conveyed various lots in said subdivision to various individuals and had been divested of title to all remaining lots in said subdivision prior to January 4, 1936, by a grant deed of 2,416 lots to Interstate Realty Improvement Company and various deeds from tax collectors. The Interstate Realty Improvement Company conveyed various lots in said subdivision to various individuals and was divested of its remaining title to all of the lots acquired from Title Insurance and Trust Company by quitclaim deed to M. Kelly and wife. Kelly and his wife then conveyed their interest in all lots acquired from Interstate Realty Improvement Company to Capital Incomes Corporation. That Dictionary Hill Avocado Groves, a partnership, first acquired a record interest in 323 lots in said subdivision on March 14, 1952, by a quitclaim deed dated March 14, 1952, and recorded in Book 4404, page 393 of the official records of San Diego County. Since March 14, 1952, said partnership has acquired title to numerous lots in said subdivision by various conveyances of record and now holds title to some 2,000 of the 2,568 lots in said subdivision. That no other subdivision map for this tract has been filed since the filing of Map Number 1317 on February 21, 1911; that no proceedings have been instituted with respect to this subdivision pursuant to the Subdivision Land Exclusion Law (Bus. & Prof. Code, §§ 11700-11709).

That the present owner, Dictionary Hill Avocado Groves, a partnership, who is neither the original owner, subdivider, developer or agent thereof, now proposes to sell a majority of the lots which it owns to various purchasers, which sales

if allowed will far exceed five in number. Prior to the filing of this action the present owner of said lots, acting by its respective agents, attempted to comply with the subdivision law of this state by making application to the Division of Real Estate for a subdivision report and for authority to sell lots owned by it. That Dictionary Hill Avocado Groves, pursuant to Business and Professions Code, sections 11000 to 11021, and the rules and regulations of the Real Estate Commissioner contained in title 10, chapter VI, article 12 of the California Administrative Code, filed with the respondents a questionnaire and paid the prescribed fee therefor for the purpose of securing the Real Estate Commissioner's public report and authority to sell from 2,000 lots owned by it in the tract involved. That after some investigation and conference respondents disclaimed ownership of any lots in certain blocks of said tract, which lots are marked in green on the tract map filed herein (Exhibit 1). Other lots in said tract which have never been owned by the partnership are also shown in green on said map.

That the Real Estate Commissioner issued a partial subdivision public report authorizing the sale of some 350 lots in the subdivision tract and pursuant therewith the partnership, acting by and through its agents, has sold some of the lots covered by said partial report. That on November 28, 1955, the partnership asked for a further partial report on some additional 550 lots in said tract which were not included in the previous partial report and renewed its original request for a subdivision report on all lots which it owned in said tract. After the receipt of these requests the respondents made a further examination into the matter and made certain determinations set forth in the orders to show cause and statements of issues referred to in paragraphs two and four of plaintiff's amended complaint for declaratory relief and injunction and respondents commenced their administrative proceeding Number H-13382 L.A. by filing and serving said orders to show cause and statements of issues mentioned in said paragraphs of plaintiff's amended complaint.

That prior to the commencement of this action and in order to facilitate the sales of lots which would otherwise be inaccessible, the plaintiff and the present owners have constructed contour roads over a portion of the subdivision, which roads cut across and traverse certain of the lots in said tract. That the Board of Supervisors of San Diego County vacated and abandoned portions of various alleys in said

subdivision and certain of the dedicated streets therein in the northwest part of said subdivision tract.

That there exists a controversy between the plaintiff and the respondents as to whether the Business and Professions Code, sections 11000 to 11021, and the rules and regulations of the Real Estate Commissioner contained in title 10, chapter VI, article 12 of the California Administrative Code apply to the proposed sales of lots in the subdivision by the plaintiff and the present owners, and as to whether the respondents, Division of Real Estate and the Real Estate Commissioner, have jurisdiction to proceed with the hearing on the orders to show cause and the statements of issues filed by the Commissioner of Real Estate in its proceeding Number H-13382 L.A., and further as to whether the plaintiff must exhaust the administrative remedies as provided by statute before applying to this court for injunctive and declaratory relief. That if the respondents are not restrained and enjoined from proceeding with said administrative hearing and if the plaintiff and present owners are not permitted to immediately proceed with the sale of the 350 lots which they own in said subdivision covered by the partial report they will sustain permanent and irreparable damage.

The trial court's findings substantially embodied the foregoing statements of fact and further found that ''there has not been any alteration of the subdivision or of the lots therein by reason of abandonment of dedicated streets or by reason of the contour roads constructed by the plaintiff and present owners as heretofore mentioned, or for any other reason''; that ''the plaintiff and the present owners have neither waived their right to question nor are they estopped from objecting to the jurisdiction of the Division of Real Estate over sales of lots in this subdivision''; that ''the plaintiff and present owners have not exhausted the administrative remedies provided by law or by section 11019 of the Business and Professions Code.''

The principal question involved in this special appeal is whether the Real Estate Commissioner has jurisdiction over the sale and proposed sale of lots in the tract involved and to proceed with the administrative hearing.

Section 11010 of the Business and Professions Code provides that prior to the time when subdivided lands are to be offered for sale or lease, the owner, his agent or subdivider shall notify the commissioner in writing of his intention to' sell or lease such offering. The notice of intention shall contain

the following information: The name and address of the owner; the name and address of the subdivider; the legal description and area of lands; a true statement of the condition of title to the land, particularly including all encumbrances thereon; a true statement of the terms and conditions on which it is intended to dispose of the land, together with copies of any contracts intended to be used; a true statement of the provisions, if any, that have been made for public utilities in the proposed subdivision, including water, electricity, gas and telephone facilities; and such other information as the owner, his agent, or subdivider may desire to present.

Section 11011 provides that after receiving the notice of intention, the commissioner may require such additional information concerning the project as he deems necessary, for which purpose he may prepare a questionnaire for the owner, his agent or subdivider to answer, and that a filing fee of $50 shall accompany the answered questionnaire. Section 11012 provides that it is unlawful for the owner, his agent or subdivider, of the project, after it is submitted to the Real Estate Division, to materially change the setup of such offering without first notifying the Real Estate Division in writing of such intended change. Section 11014 provides that the commissioner at the expense of the owner, his agent, or subdivider, may investigate any subdivision being offered for sale or lease in this state, and that the total cost of such examination shall be borne by the owner, his agent or subdivider, of the project. Section 11018 provides that when the Real Estate Division makes an examination of any subdivision, the commissioner shall make a public report of his findings thereon, and may publish the report. Section 11019 provides that the commissioner may issue an order prohibiting the sale or lease of the property if the examination of the project shows that the sale or lease would constitute misrepresentation to or deceit or fraud of the purchasers of lots or parcels in the subdivision, and that before such an order of prohibition shall be issued by the commissioner, a hearing shall be held by the Real Estate Division, and the same procedure shall be followed as provided in article 3, chapter 2, part 1, division 4 of said code. The section further provides that an order of the commissioner is subject to judicial review in accordance with the law. Section 11535 of said code defines a subdivision as follows: "(a) 'Subdivision' refers to any real property, improved or unimproved, or portion thereof,

shown on the last preceding tax roll as a unit or as contiguous units, which is divided for the purpose of sale, whether immediate or future, by any subdivider into five or more parcels within any one year period.'' And section 11000 of said code reads: '' 'Subdivided lands' and 'subdivision' refer to improved or unimproved land or lands divided or proposed to be divided for the purpose of sale or lease, whether immediate or future, into five or more lots or parcels. . . .'' The provisions of the foregoing sections are substantially the same as those formerly contained in Deering's General Laws, 1937, Act 112, section 20a et seq.

In *In re Sidebotham*, 12 Cal.2d 434 [85 P.2d 453, 122 A.L.R. 496], the Supreme Court held that the object of said law, prevention of fraud and sharp practices in a type of real estate transactions peculiarly open to such abuses, is obviously legitimate; and the method, involving investigation and disclosure of certain essential facts, and a protection for an innocent purchaser against loss of his land by foreclosure of an underlying mortgage, is perfectly reasonable; that a safeguard against arbitrary action is provided in such act in the requirement of a public report of the commissioner's investigation and a public hearing on any contemplated prohibitory order, and that the decisions sustaining regulatory legislation to prevent fraud are numerous and fully support the law herein attacked.

Rule 2796, published as section 2796, title 10, California Administrative Code, provides as follows:

''Procedure re Subdivisions Prior to August 11, 1933. The owner, subdivider or agent of a subdivision, a map of which was filed of record or which was originally offered for sale prior to August 11, 1933, shall file a questionnaire and pay the prescribed fee and secure the Commissioner's public report thereon prior to offering for sale any parcels in said subdivision subsequent to that date.''

Plaintiff Chapman contends, and the trial court held, that under the agreed facts the subdivision law is applicable only to the original subdivider or owner of subdivided lands and that Chapman, not being the original owner or subdivider, was exempt from disclosure and stop-order procedure provided by the law. We do not agree with this contention and holding.

Section 11010 of the Business and Professions Code provides for the filing of a notice of intention to sell or lease prior to the time when ''subdivided'' lands are offered for

sale or lease. The object of the statute is to prevent fraud in the sale or leasing of property and may apply to lands which have been previously subdivided. Section 11014 of said code provides that the commission may investigate "any subdivision being offered for sale in this State" and under section 11019 an order prohibiting the "sale and lease" of the property may be issued after a hearing had thereon. There is nothing in these sections restricting the commissioner's investigation or stop-order procedure to situations to which the offering is made by the original subdivider.

In *Cowell* v. *Clark*, 37 Cal.App.2d 255 [99 P.2d 594] and *People* v. *Gallinger*, 37 Cal.App.2d 261 [99 P.2d 597], appellants were held to be subdividers and subject to the provisions of the Real Estate Act where they divided the subject matter of the leases and proposed to make several assignments thereof. Apparently rule 2796 of the Rules and Regulations of the Real Estate Commission, *supra*, has been in effect for many years and has been the administrative agency's conclusion as to the applicability of the law. As is said in *Universal Eng. Co.* v. *State Board of Equalization*, 118 Cal. App.2d 36, 43 [256 P.2d 1059] :

"In resolving a question as to the import of a statute, a court attaches probative weight to the administrative agency's conclusion as to the meaning of the law, and a court will not ordinarily adopt another construction unless the determination of the agency or board is shown to have been clearly erroneous or unauthorized. 10 California Jurisprudence 10-Year Supplement, Taxation, § 427, p. 533; *Coca-Cola Co.* v. *State Board of Equalization, supra.*"

And in *City of Los Angeles* v. *Rancho Homes, Inc.*, 40 Cal. 2d 764, 770-771 [256 P.2d 305], it is said:

"And 'although not necessarily controlling, as where made without the authority of or repugnant to the provisions of a statute, the contemporaneous administrative construction of the enactment by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized.' (*Coca-Cola Co.* v. *State Board of Equalization*, 25 Cal.2d 918, 921 [156 P.2d 1] ; *Holloway* v. *Purcell*, 35 Cal.2d 220, 226 [217 P.2d 665].)"

The trial court found and the record shows that prior to the commencement of this action and in order to facilitate the sales of lots which would otherwise be inaccessible, the plaintiff and the present owners have constructed contour roads

over a portion of the subdivision, which roads cut across and traverse certain of the lots in said tract. This finding is inconsistent with and contrary to the finding that there was no alteration of the subdivision by reason of the abandonment of streets or the construction of the contour roads, which finding is unsupported by the evidence.

Section 11012 of the Business and Professions Code provides that it is unlawful for the owners or subdividers to materially change the setup of the offering without notifying the Real Estate Division in writing of such intended change, and in Sidebotham, 12 Cal.2d 434, *supra,* it was held that this provision of the code was a reasonable exercise of the police power. In *Murphy* v. *San Gabriel Mfg. Co.,* 99 Cal. App.2d 365, 368 [222 P.2d 85], it was held that the provisions of this section are mandatory.

The court further found and the record shows that the subdivision map herein was prepared without reference to the topography of the land involved and the streets and roads were made out in a rectangular grid type of map without regard to the mountainous terrain and ravines in the area; that the defendants had reasonable cause to believe that although offered for sale in 50-foot lots for residential purposes, the property was unsuitable for such purpose because it was wholly lacking in water supply, sewage disposal and drainage facilities; that the county ordinance required 60-foot lots and streets; that the roads and streets have not been installed to the lots and there is no reasonable or practical means of ingress or egress to and from them; that the cost of developing the streets and roads shown on the tract map would far exceed the value of the lots to be made accessible; that access to certain portions of the tract is only by use of a contour road which has been rough graded and constructed without reference to lot lines and constitutes a material alteration to lots as reflected by the recorded map; and that said road has been constructed without approval or recording of the maps as required by law.

We conclude that the subdivision law (Bus. & Prof. Code, §§ 11000 to 11021) is applicable in the instant case; that plaintiff Chapman and his associates are subject to the requirements of said law and that the trial court erred in concluding that said law applies only to subdivisions made subsequent to the effective date of said law adopted in 1933.

The trial court found that the plaintiff and present owners of the property involved have not exhausted the ad-

ministrative remedies provided by law or by section 11019 of the Business and Professions Code. However, the court erroneously concluded that the plaintiff need not exhaust said remedies. The administrative proceedings against Chapman's plan to sell the lots involved provide for notice and full opportunity for him to be heard before any final administrative order could be made. (*In re Sidebotham, supra,* 435-436.) The statement of issues and notice of hearing were served on Chapman and his associates on January 3, 1956, and they at first signified their intention to appear by filing a notice of defense on January 17, 1956. On March 21, 1956, a supplemental statement of issues and notice of hearing thereon was served on Chapman and he filed a supplemental answer thereto in which it was alleged that the lots involved have lost their identity as a subdivision within the meaning of the subdivision law and that the action of the Real Estate Commissoner was unconstitutional. On May 17, 1956, before the scheduled hearing on the supplemental statement of issues, Chapman filed his petition in court and further administrative proceedings were halted by court order. The administrative hearing has not been held and no final administrative order has been made. Therefore, it is not known whether the commissioner will or will not issue a stop-order, since he has not been permitted to take evidence or hear arguments in the matter.

In *United Ins. Co.* v. *Maloney,* 127 Cal.App.2d 155 [273 P.2d 579], it was held that the general rule requiring exhaustion of administrative remedies before equitable relief can be granted is well established; that there is an exception to the rule to the effect that injunctive relief may be granted against invalid administrative action if irreparable damage will occur if the person affected were required to exhaust his administrative remedies; and that the exception is not applicable where the only administrative action taken was the setting of the matter for hearing or a hearing thereon.

In *United States* v. *Superior Court,* 19 Cal.2d 189, 194 [120 P.2d 26], it was held that it is now firmly established in this state that a litigant must invoke and exhaust an administrative remedy provided by statute before he may resort to the courts; that jurisdiction to entertain an action for judicial relief is conditioned upon the completion of the administrative procedure; that it lies within the power of the administrative agency to determine in the first instance and before judicial relief may be obtained, whether a given contro-

versy falls within the statutory grant of jurisdiction; and that even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief. (Citing cases.)

In *Hostetter* v. *Alderson,* 38 Cal.2d 499, 500 [241 P.2d 230], it was held that an action for declaratory relief is not appropriate for a review of an administrative order.

Under the facts in the instant case and in view of the rules announced in the foregoing authorities, it appears that plaintiff Chapman and his associates are bound by the rule requiring the exhaustion of administrative remedies before being able to obtain relief in the present action.

Since we have concluded that the judgment herein must be reversed because of the errors discussed, it is unnecessary to pass upon other points raised by the appellant.

Judgment reversed.

Barnard, P. J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 15, 1957. Shenk, J., Carter, J., and Schauer, J., were of the opinion that the petition should be granted.