[Crim. No. 9206. Third Dist. Feb. 21, 1979.]

THE PEOPLE, Plaintiff and Respondent, v.
HERBERT GLEN BYERS et al., Defendants and Appellants.

## COUNSEL

Robert E. Proaps, Jr., Raoul J. LeClerc, Blade & LeClerc, under appointments by the Court of Appeal, and Colleen D. Chapman for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Joel E. Carey, Shirley A. Nelson, Roger E. Venturi and Anthony L. Dicce, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

EVANS, J.—Defendants appeal from the judgments finding them guilty of violating several provisions of the Subdivided Lands Act (Bus. & Prof. Code, §§ 11010, 11018.1, 11022, 11023). Defendants were found to have violated the act by: (1) failing to file with the Commissioner of Real Estate a notice of intention to subdivide and sell subdivided parcels of land; (2) offering the parcels for sale without providing purchasers with a public report; and (3) engaging in false and misleading advertising concerning the land offered for sale.

Defendants, Herbert Glen Byers, Janice Higgins, and Ronald Dee Edmundson, assisted Herbert's father, Warren Byers, in the sale of parcels of land in Butte County near the Oroville airport and the Thermalito Afterbay.

Warren Byers purchased approximately 456 acres of land from the Crocker Land Company in March 1975. When the Crocker Land Company acquired the land in 1887, a map was recorded which referred to the land as a subdivision; however, the land was not in fact divided into smaller parcels; it was merely a paper division.

After purchasing the land, Warren Byers subdivided the parcel through "four by fouring" it.[1]

Portions of the land were transferred to Janice Higgins, Ronald and Mary Edmundson, Warren and Willa Evans, and Esther Vizdal.

Following the conveyances to these straw grantees, parcels of the land were again divided and sales made to interested purchasers. Herbert Byers was working with his father and showed the property to some prospective purchasers. Edmundson, who was a licensed real estate broker, participated in the scheme through allowing his name to be used as a grantor, and Higgins signed deeds showing her to be the owner of some of the parcels offered for sale.

Proceeds from the sales went to Warren Byers. He received the down payments and had the remaining payments mailed to Esther Vizdal in Canada.

After an investigation by the Butte County District Attorney's office, the defendants were indicted by a grand jury; at this time Warren Byers moved to Canada.

At the conclusion of trial, the jury could not agree except on the counts pertaining to false advertising; and as to these counts, it found Warren Byers guilty and Edmundson and Warren Evans not guilty. A mistrial

---

[1]Prior to 1975, "four by fouring" allowed a developer to circumvent the Subdivided Lands Act by making transfers to four straw grantees. Divisions of a parcel into less than five parcels was not a subdivision within the coverage of the act. (See Comment, *Land Development And The Environment: The Subdivision Map Act* (1974) 5 Pacific L.J. 55, 60; former Bus. & Prof. Code, § 11535, subd. (a).) However, the definition of "subdivision" was amended in 1974 by amendment to the Subdivision Map Act (Gov. Code, §§ 66410-66499.37) so that most divisions of four or less parcels were included as subdivisions.

Currently, there are two legislative enactments pertaining to subdivisions. The Subdivision Map Act pertains to the filing of parcel maps and regulation of subdividing by local county agencies. (See Gov. Code, §§ 66425-66431, 66444-66468.) The Subdivided Lands Act details the duties of brokers with respect to the Commissioner of Real Estate and requires certain notices to be filed with the commissioner and certain reports made available to prospective purchasers. (See Bus. & Prof. Code, §§ 11000-11029.1.)

was declared with respect to the remaining counts, the jury dismissed, and the parties stipulated that the court without a jury could decide the remaining issues. The court found Higgins and Herbert Byers guilty on all three counts of the indictment, and found Evans and Edmundson guilty as charged in two counts, failure to notify of intention to sell subdivided lands (Bus. & Prof. Code, § 11010), and failure to obtain a public report (Bus. & Prof. Code, § 11018, subd. (a)). It was stipulated that the offenses would be misdemeanors.

Defendants, Higgins, Edmundson, and Herbert Byers, appeal from these judgments. They make the following contentions on appeal:

(1) the Subdivided Lands Act is unconstitutional as it is not a legitimate exercise of the state police power and a violation does not require any mens rea;

(2) because there was insufficient evidence of participation by Higgins, Edmundson, or Herbert Byers, it was error for the court to deny defendants' motion for acquittal;

(3) the trial court's determination of a mistrial was improper as the jury was discharged without a showing that they had considered all counts in the indictment; consequently, the trial court's subsequent verdict placed defendants in jeopardy twice; and

(4) in sentencing defendants the trial court was impermissibly biased because it penalized Higgins for claiming her right of appeal and penalized Edmundson and Herbert Byers for refusing to express remorse.

I

Defendant Byers' constitutional challenge to the Subdivided Lands Act fails to find support in reason or judicial precedent.

We do not consider lightly the importance of the constitutional guarantee attaching to private ownership and use of real property. However, more than 50 years ago, it was clearly established that the property ownership rights, reserved to the individual by constitutional provision, must be subordinated to the rights of society. It is now a fundamental axiom in the law that one may not do with his property as he pleases; his use is subject to reasonable restraints to avoid societal detriment. Incidental damages resulting from property use restraints

imposed by the government are not considered a taking or compensable damage. (See *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 488 [234 P. 381, 38 A.L.R. 1479].)

■ The regulation of a subdivision of land by the state does not constitute a denial of due process or equal protection. An individual property owner does not suffer, by the terms of the Subdivided Lands Act, an impairment of a fundamental personal liberty. The regulation of subdivision of lands is not a deprivation of a fundamental liberty but rather a limited economic regulation of the use of real property imposed to protect the members of the public exposed to that land use. The object of the present law and its predecessor is the prevention of fraud and sharp practices in a type of real estate transaction peculiarly open to such abuses. (*In re Sidebotham* (1938) 12 Cal.2d 434, 436 [85 P.2d 453, 122 A.L.R. 496]; *People* v. *Mel Mack Co.* (1975) 53 Cal.App.3d 621, 629-630 [126 Cal.Rptr. 505]; *People* v. *Mancha* (1974) 39 Cal.App.3d 703, 720 [114 Cal.Rptr. 392].)

■ Moreover, in the area of economics in land use regulation, the state does not violate the equal protection or due process provisions of the Constitution merely because the classification or regulation of use may be imperfect. If the regulation has some reasonable basis, it does not offend constitutional protections because it may result in some inequality or individual hardship. (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 410 [128 Cal.Rptr. 183, 546 P.2d 687].)

■ The regulation of subdivided lands has been determined to be and presently is a necessary and reasonable protection against fraud and sharp practices.

The provisions of Business and Professions Code sections 11010, 11018.1, 11022, 11023, and 11029.1 here challenged do not violate or conflict with the equal protection clause or the due process requirement of the Constitution.

■ We reject Byers' further contention that section 11029.1 is unconstitutional because it provides for a criminal penalty in a civil proceeding. Section 11029.1 merely authorizes the imposition of a civil penalty, and does not provide for an adjudication of criminality. Section

11023 specifically provides for a *criminal* penalty in a criminal proceeding and does not provide for criminal punishment in a civil proceeding.

■ The act punishes the voluntary publication of any advertisement that is misleading. It does not require knowledge that the statements are misleading. The jury was instructed that the defendants must know that an advertisement was misleading in order to violate section 11022; that instruction, although erroneous,[2] inured to the benefit of the defendants.

■ Edmundson and Higgins further contend that the Subdivided Lands Act has no application to the subject property transactions. That contention may be disregarded as it was not raised in their opening brief but appears for the first time in their closing brief. (*Phelps* v. *Mayers* (1899) 126 Cal. 549, 551 [58 P. 1048]; *Brenkwitz* v. *City of Santa Cruz* (1969) 272 Cal.App.2d 812, 819 [77 Cal.Rptr. 705].) Moreover, the claim is patently without merit.

The evidence does not support the contention that the lands were in fact "subdivided" in 1887; the land was merely referred to as a subdivision; it was not divided and was held of record in individual parcels.

There is nothing in the Subdivided Lands Act restricting its applicability to divisions made after its effective date or to sales by the original land owner or subdivider. (*Chapman* v. *Division of Real Estate* (1957) 153 Cal.App.2d 421, 428-429 [314 P.2d 773].) Furthermore, this is not a case where an act done by the original subdivider is made illegal by a subsequent legislative enactment (see *Forman* v. *Delaware Construction Co.* (1954) 123 Cal.App.2d 426, 430 [266 P.2d 888]) as the land originally described as a subdivision was at best an undeveloped subdivision of land that did not and does not meet the requirements of the Subdivided Lands Act.

---

[2]We reject any possible contention that a reasonable and good-faith belief that the subdivision scheme proposed by Byers was legal is a defense to the charged violations. In *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092], the Supreme Court held that a good-faith belief that a woman was of the statutory age to consent to sexual intercourse was a defense to a charge of statutory rape. In that case, the court held that there was no public policy to be served by holding a defendant liable in a case where the alleged victim was but three months short of being of legal age; in the present case there is a public policy to be served by imposing strict liability in the protection of innocent purchasers. Moreover, there is another distinction in the extent of the duty imposed on potential violators of the Subdivided Lands Act. A broker is a person with special knowledge and skill and should properly be required to file all required reports. (See Bus. & Prof. Code, §§ 10130-10148.)

## II

■ Higgins and Edmundson contend that the evidence is insufficient to support their conviction and accordingly, argue that the trial court erred by refusing to grant their motion for acquittal.

Higgins was found to have aided and abetted the commission of the violations of the Subdivided Lands Act.

"All persons concerned in the commission of a crime, . . . whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised . . . its commission, . . . are principals in any crime so committed." (Pen. Code, § 31.)

■ Ignorance of the Subdivided Lands Act is not a defense to prosecution for violating the act. (*Murphy v. San Gabriel Mfg. Co.* (1950) 99 Cal.App.2d 365, 368 [222 P.2d 85].) The intentional doing of an act expressly prohibited by statute constitutes the offense denounced by the law regardless of good motive or ignorance of the criminal character of the act. (*People v. Gory* (1946) 28 Cal.2d 450, 453 [170 P.2d 433]; *People v. Mancha, supra,* 39 Cal.App.3d at p. 722.)

A person who assists in making sales without conforming to the statute prohibiting such conduct may be found guilty of violating that statute regardless of a belief that assistance in such sales is lawful. (*Haruko Takeuchi v. Schmuck* (1929) 206 Cal. 782, 785 [276 P. 345]; *People v. Rubens* (1936) 11 Cal.App.2d 576, 584 [54 P.2d 98].) Participation in a series of unlawful transactions are circumstances sufficient to show that the person aided and abetted illegal conduct. (*People v. Neder* (1971) 16 Cal.App.3d 846, 851 [94 Cal.Rptr. 364]; *People v. Flores* (1969) 269 Cal.App.2d 666, 670 [75 Cal.Rptr. 231].)

■ The evidence establishes Higgins' assistance in the Byers' plan to circumvent the Subdivided Lands Act.

Her testimony revealed a close personal relationship with Warren Byers, and that he had told her he was putting land in her name as financial "security." She was aware that Byers bought and sold land at the time of the transactions involved, and signed deeds showing her to be the owner of some of the parcels of property sold to Byers; and she signed numerous real estate documents at Byers' request.

Her participation as a straw grantee in the scheme of "four by fouring" enabled Byers to circumvent the Subdivided Lands Act. Although we concede Higgins may have naively concluded that she was not violating the law, she nevertheless voluntarily assisted Byers.

■ Edmundson's contention that the evidence is insufficient to support his conviction is singularly devoid of merit. Edmundson testified that Byers approached him in April or May of 1975, showed him a parcel map, and asked if he (Byers) could indicate Edmundson as an owner of portions of the land. He also testified to an awareness of the practice of "four by fouring" and that he had at one time owned a subdivision. He was aware of the nature of, and requirement for, "public reports."

Although Edmundson believed that his conduct was lawful, the fact remains that he was a real estate salesman who voluntarily allowed his name to be used as a fictitious owner of property in a series of real estate transactions which were not in conformity with the requirements of the Subdivided Lands Act. The evidence overwhelmingly supports his conviction.

## III

■ Byers, Edmundson, and Higgins contend that the constitutional proscription against double jeopardy was violated following the court's declaration of mistrial and the discharge of the jury when it was determined the jury could not agree on verdicts for all counts, and the court reinstituted the proceedings resulting in their conviction.

■ "Under article I, section 13, of the California Constitution and Penal Code section 1023, the discharge of a duly impaneled and sworn jury without a verdict bars a retrial unless the defendant consented to the discharge or legal necessity required it under Penal Code section 1140. (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 712-713 [87 Cal.Rptr. 361, 470 P.2d 345].)" (*People* v. *Rojas* (1975) 15 Cal.3d 540, 545 [125 Cal.Rptr. 357, 542 P.2d 229].) Such legal necessity exists if it satisfactorily appears to the court that there is no reasonable probability that the jury could resolve its differences and render a verdict. (*In re Chapman* (1976) 64 Cal.App.3d 806, 815 [134 Cal.Rptr. 760].)

■ The essence of the contention here presented is that the court erred by questioning only the foreman of the jury to determine if a hopeless deadlock existed. Judicial precedent compels rejection of the

contention. (*People* v. *Caradine* (1965) 235 Cal.App.2d 45, 49-50 [44 Cal.Rptr. 875]; *In re Chapman, supra,* 64 Cal.App.3d at p. 815.) Whether the jurors are to be questioned individually or only the foreman as to the probability of reaching a verdict is left to the discretion of the trial judge. (*People* v. *Caradine, supra,* 235 Cal.App.2d at pp. 49-50.)

Defendants' contention that the jury considered only 11 of the 12 counts and that therefore, the discharge was without legal necessity is without merit as it patently ignores the record. The foreman stated, "We are at a stalemate on *all* counts except the individuals on Count III. . . ." (Italics added.)

We also reject defendant Byers' contention that the jury should have been allowed further time to deliberate. The record indicates they had deliberated for one and one-half days, and that no change in the jurors' positions had occurred in the last six hours of deliberations. A good-faith effort on the part of both the jurors and the trial court was made to resolve the issues; the court's determination that further time would not resolve the differences was a proper exercise of judicial discretion.

## IV

Defendants Edmundson and Higgins claim they were unfairly sentenced because they refused to admit guilt and that the court's imposition of sentence under such circumstances is a violation of the privilege against self-incrimination. We summarily deny the assertion as the facts do not support it.

Probation was initially offered Higgins. However, she rejected it on the conditions offered, and as a result the court imposed punishment. As her counsel stated, "[I]t's her wish to advise the Court that she believes she is not guilty, and she knows the Court has found her guilty, and she wants the benefit of an appellate review on that. [¶] If the appellate review says the trial court was correct in making its finding, based upon the evidence that was presented, she is willing to accept the punishment on that, and if the appellate court finds otherwise, she would be glad not to be punished. [¶] Therefore, she is, under those circumstances, and in that frame of mind, that she would just assume [*sic*] not be on probation and have the Court impose a sentence on her, and she is willing to accept the punishment, whatever it may be, and take it on appeal, . . . [¶] [Y]ou can

say that the Defendant does not accept 'probation. I think that's sufficient."

The court did not impose punishment because of the exercise of the right of appeal. As the court stated, "The Defendant is entitled to appeal; that's her right. And there should be no restrictions imposed upon this right to appeal. If a person genuinely feels they are innocent of something, they ought to appeal. So, I don't want to suggest for a minute that I would impose a sentence on anybody because they exercised their rights. I wouldn't do that; I don't believe in it." The court then stated, "If she feels she's innocent, she is entitled to take the matter on appeal, and I don't feel that has anything to do with it." The court again stated that it would grant probation on the conditions previously indicated; however, once again the offer was refused. Finally, before entry of judgment, after discussing the matter with Higgins, her counsel stated, "I guess really, [she] actually thinks the same way the Court does; if she's going to be punished she'd rather get it over with, and therefore she wishes to advise the Court she does not wish to accept probation, just have the straight punitive action." The court stated its reluctance once again, "I really wish she wouldn't do what she's doing. If that's what she wants, then I think she may as well face it, because I do intend to impose the maximum penalty." Moreover, the court stated that "if she wants to accept probation and live up to it she still can get an appeal."

█ Edmundson's contention that the court in its imposition of sentence was biased because of Edmundson's lack of remorse is puzzling as the record belies the assertion. The record establishes that counsel was disputing the claim in the probation report that Edmundson did not acknowledge that he was guilty of the offenses and counsel stated "That's not true, and if the Court wishes to ask Mr. Edmundson as he appears for sentencing, he does himself acknowledge his guilt for the crimes that he's been convicted of. He understands them; he knows what he did wrong, and he acknowledges that he did wrong. He did not realize—what he said was that he did not realize he was doing something wrong or serious at the time he did it. He knows perfectly well what he did now, and he's certainly suffered so far for it."

The court stated subsequently "The only part that really concerns me—counsel has made reference . . . [to the probation report's statement] '. . . Mr. Edmundson seems to rationalize . . .' —the explanation regarding loopholes is not particularly—it doesn't mitigate anything as far as this Court is concerned."

Following this exchange the court noted that Edmundson did not have a prior record, had numerous letters of reference, and asked if there were going to be any representations or looking for loopholes or borderline matters. When Edmundson said that there would not be, the court imposed sentence in accordance with the recommendation of the probation report. There is no merit to the claim that an enhanced punishment was imposed.

The judgments are affirmed.

Regan, Acting P. J., and Paras, J., concurred.

Petitions for a rehearing were denied March 19, 1979, and the petitions of appellants Byers and Higgins for a hearing by the Supreme Court were denied May 10, 1979.