[Civ. No. 22586. Third Dist. Jan. 3, 1984.]

JOSEPH WILLIAM ELLIS MANNING et al.,
Plaintiffs and Respondents, v.
DAVID H. FOX, as Real Estate Commissioner, etc.,
Defendant and Appellant.

Counsel

John K. Van de Kamp, Attorney General, Edward P. Hollingshead and Derry L. Knight, Deputy Attorneys General, for Defendant and Appellant.

Brunello & Cline and James L. Brunello for Plaintiffs and Respondents.

Opinion

SPARKS, J.—In this case we consider the circumstances under which real estate licensees may be subject to discipline for wilfully disregarding the Subdivided Lands Act. David H. Fox, as Commissioner of the Department of Real Estate, appeals from a judgment of the Superior Court of El Dorado County, which directed him to set aside an administrative decision imposing

discipline against the real estate licenses of Joseph William Ellis Manning, Golden Chain Enterprises, Inc. (Golden Chain), and Kenneth DeArment Milner, and to enter a new decision imposing no discipline against Manning and Golden Chain, and to reconsider the discipline imposed against Milner. The commissioner contends the discipline was properly imposed against Manning and Golden Chain for their participation in the creation of an illegal subdivision in 1977 and 1978, and against Milner for negligent supervision of Manning. We agree and shall reverse the judgment.

## 1. *The Cast of Characters*

Plaintiff Manning was, at the time of these events, a licensed real estate salesperson. His license was restricted pursuant to Business and Professions Code section 10156.5, since he had been the subject of four previous disciplinary proceedings by the Department.[1] Manning's broker was plaintiff Milner, who was the designated officer for plaintiff Golden Chain. Although in contemplation of the law Manning was the agent of Milner (*Gipson* v. *Davis Realty Co.* (1963) 215 Cal.App.2d 190, 207 [30 Cal.Rptr. 253]), Manning acted as sales manager for Golden Chain. Gary Lindstrom was the owner and president of Golden Chain.

John O'Ban is a real estate investor. He has been married to Eugenia B. Tedrowe since 1972. O'Ban had prior business dealings with Manning and Lindstrom when they incorporated Lin Man-O Ranches Inc., for the purpose of buying the B O B Ranch. O'Ban also owns Longview Ranch, Inc. (Longview). Lee McGuire is a general engineering contractor who had done construction work for Longview and O'Ban prior to 1977.

## 2. *The Operation*

In 1977 O'Ban became interested in purchasing, for Longview, a 110 (or 113) acre ranch property in El Dorado County owned by Carroll and Marie Peebles. Manning, as manager of Golden Chain, participated in the negotiations. Ultimately the Peebles sold the property to Longview, and took back a deed of trust with provision for partial release and reconveyance of 10-acre parcels under specified conditions. When this contract was concluded Golden Chain did not receive its commission; instead, Golden Chain and Longview entered into an agreement on March 3, 1977, which provided: "Golden Chain agrees to loan their share of the commission, being $2250—

---

[1]Business and Professions Code section 10156.5, subdivision (a) provides: "The commissioner may issue a restricted license to a person: [¶] (a) Who . . . has been licensed under this chapter and who has been found by the commissioner after a hearing to have violated provisions of Division 4 of this code where such violation would justify the suspension or revocation of the license."

to Longview Ranch Inc. in order to close this sale. [¶] Longview Ranch, Inc. agrees to give Golden Chain Inc. an exclusive listing on said 110 acre parcels in the form of 10-acre parcels." The agreement was signed by O'Ban as president of Longview, and by Manning as manager of Golden Chain.

On the same day this agreement was entered into, Manning took on behalf of Golden Chain a listing from Longview for two 10-acre parcels from the subject property. At the same time Manning took a listing from Tedrowe for four other parcels from the property. Manning was aware that Tedrowe was O'Ban's wife.

O'Ban contacted McGuire and asked him to cut some roads on the subject property. McGuire was still owed money from the last work he had done for Longview (O'Ban) and would not perform more work without security. It was agreed that McGuire would take property as collateral for payment, and he was to be paid as the property was sold. O'Ban and McGuire agreed that the collateral was to consist of 40 acres, which would be sold in four 10-acre parcels. On March 10, 1977, Manning took a listing from McGuire on four 10-acre parcels. Manning was aware that McGuire held his property only as security.

Manning prepared and utilized a map of the subject property which showed its division into at least 10 parcels. In the ensuing months the property purchased by Longview was effectively subdivided into 10 parcels. This was accomplished through a process known as "four by fouring." (See *People* v. *Byers* (1979) 90 Cal.App.3d 140, 146, fn. 1 [153 Cal.Rptr. 249].) In this process Longview divided the property into four parcels and sold two 10-acre parcels to consumers,[2] and two larger parcels were conveyed to McGuire and Tedrowe. McGuire's parcel was divided into four 10-acre parcels and sold to consumers. Tedrowe's parcel was divided into smaller parcels and sold to four consumers. In some of these transactions McGuire and Tedrowe took promissory notes secured by deeds of trust for the purchase price, and they assigned the notes and deeds of trust to Longview.

Golden Chain did not receive commissions on the conveyances by Longview to McGuire and Tedrowe, but acted as selling agent and received commissions on all of the sales of the smaller parcels to the consumers. The

---

[2] We use the term "consumers" here since there is no evidence that any of the purchasers of the 10-acre subparcels were related to or involved with any of the parties to this action. It appears in the record that many of these "consumers" purchased their parcels for investment and with the intention of further dividing the land, and that Manning in fact told them that the land could be further split. For purposes of this action, however, the purchasers of the smaller parcels may be considered consumers.

total commissions received by Golden Chain on these transactions including the commission on the Peebles to Longview sale, amounted to $31,975.

### 3. The Law

The subdivision of real property is the subject of governmental regulation in California. (See *People* v. *Byers, supra,* 90 Cal.App.3d at p. 146.) The Subdivided Lands Act (Bus. & Prof. Code, § 11000 et seq.; unless otherwise indicated all further statutory references are to that code), sets forth the requirements which must be met in the process of subdivision and sale of subdivided lands. Of particular concern here is section 11010, which provided at the time in issue that prior to the time when subdivided lands are to be offered for sale or lease, the owner, his agent or subdivider must notify the commissioner in writing of the intention to sell or lease such offering, and must supply certain information in the notice. Also of interest is section 11018.2, which at the time of the events in this case provided that no person shall sell or lease, or offer for sale or lease any lots or parcels in a subdivision without first obtaining a public report from the commissioner.

During the transactions which are the subject of this action no one informed the commissioner of an intent to sell or lease subdivided lands and a public report was not obtained. This was because the mechanism chosen for subdivision of the land, "four by fouring," resulted in no single "owner" dividing a parcel into more than four parcels. Four by fouring, however, is not a legitimate procedure for evasion of the subdivided lands act. (See *People* v. *Byers, supra,* 90 Cal.App.3d at p. 146.)

Section 10177, subdivision (d) provides that the commissioner may suspend or revoke the license of any real estate licensee who has "Willfully disregarded or violated any of the provisions of the Real Estate Law (commencing with Section 10000 of this code) or of Chapter 1 (commencing with Section 11000) of Part 2 of this division or of the rules and regulations of the commissioner for the administration and enforcement of the Real Estate Law and Chapter 1 of Part 2 of this division."

### 4. The Administrative Proceeding

An accusation was filed against Manning, Golden Chain, and Milner in December 1978 in connection with the illegal subdivision of the Peebles Ranch. Grounds for suspension or revocation of Manning's license were alleged under section 10177, subdivision (d), in conjunction with sections 11010 and 11018.2. Grounds for suspension or revocation of Golden Chain's license were alleged under section 10177, subdivision (d), in conjunction with sections 11010 and 11018.2, and under section 10177, sub-

divisions (h), and (g) in conjunction with sections 11010 and 11018.2.[3] The same grounds were alleged as to Milner.

An administrative law judge of the office of administrative hearings heard the matter and issued a proposed decision which was adopted by the commissioner. In that decision the administrative law judge found that the agreement reached on March 3d to sell the 110-acre parcel and divide it into 10-acre parcels, and the subsequent sales of the property, created a subdivision; that neither Manning nor Golden Chain nor anyone else ever applied for, or received, a subdivision report; that Manning knew the entire transaction was in violation of the subdivision act and that he acted in accordance with the policy of Golden Chain. That judge further found that although Milner did not know of these violations, he should have known what was going on in the office where he was the designated broker. The decision further found that Manning had violated sections 11010 and 11018.2, and that cause for discipline was established under section 10177, subdivision (d). Golden Chain was found to have violated sections 11010, and 11018.2, and 10177, subdivision (h), and cause for discipline was found under section 10177, subdivisions (d) and (h). Milner was not found to have violated sections 11010 and 11018.2, but was found to have been negligent and incompetent under section 10177, subdivision (g) and to have failed to exercise proper supervision over Manning in violation of section 10177, subdivision (h). The license rights of all three respondents were ordered revoked. Milner was to be allowed a restricted broker's license under section 10156.5.

---

[3]In 1977, these sections read as follows:

Section 10177, subdivisions (d), (g) and (h): "The commissioner may suspend or revoke the license of any real estate licensee, or may deny the issuance of a license to an applicant, who has done any of the following: . . . (d) Willfully disregarded or violated any of the provisions of the Real Estate Law (commencing with Section 10000 of this code) or of Chapter 1 (commencing with Section 11000) of Part 2 of this division or of the rules and regulations of the commissioner for the administration and enforcement of the Real Estate Law and Chapter 1 of Part 2 of this division. . . . [¶] (g) Demonstrated negligence or incompetence in performing any act for which he is required to hold a license. [¶] (h) If, as a broker licensee, failed to exercise reasonable supervision over the activities of his salesmen. . . ." (Stats. 1976, ch. 1346, § 7, p. 6133.)

Section 11010: "Prior to the time when subdivided lands are to be offered for sale or lease, the owner, his agent or subdivider shall notify the commissioner in writing of his intention to sell or lease such offering. [¶] The notice of intention shall contain the following information: [Subdivisions (a)-(n) set forth in detail the information which must be contained in this notice.]" (Stats. 1975, ch. 879, § 1, p. 1959.)

Section 11018.2: "No person shall sell or lease, or offer for sale or lease in this state any lots or parcels in a subdivision without first obtaining a public report from the commissioner, except that the commissioner shall waive the provisions of this section, in writing, for expressly zoned industrial subdivisions which are limited in use to industrial purposes and expressly zoned commercial subdivisions which are limited in use to commercial purposes." (Stats. 1974, ch. 606, § 1, p. 1450.)

### 5. *The Superior Court Action*

Manning, Golden Chain and Milner petitioned for a writ of mandate. The trial court considered the certified administrative record and issued an intended decision. It noted that there is little factual dispute involved, and concluded that the issue was the meaning of the Subdivided Lands Act, and in particular, "who is a subdivider for purposes of that Act." The court reasoned that the phrase "no person" in section 11018.2 must be construed in light of the phrase "the owner, his agent or subdivider" in section 11010. It then ruled that the prohibition of section 11018.2 against the illegal sale of subdivision lots only applies to "the owner, his agent or subdivider," and that respondents were none of these. Instead, the court concluded that Manning and Golden Chain were merely the listing real estate agents for the subdivider, and were not responsible for O'Ban and Longview's failure to comply with sections 11010 and 11018.2. The court determined to issue a writ of mandate.

A judgment was entered and a peremptory writ of mandate issued, directing the commissioner to vacate his decision and to enter a new decision taking no disciplinary action against Manning and Golden Chain, and to reconsider the discipline imposed against Milner. The commissioner appeals.

### DISCUSSION

The commissioner concedes that Golden Chain and Milner were entitled to the exercise of the trial court's independent judgment on a petition for a writ of mandate. He contends, however, that since Manning held only a restricted license he was only entitled to a review to determine whether the decision of the commissioner was supported by substantial evidence. This contention is based upon section 10156.7, which provides that a restricted license does not confer any property right to the holder, and provides no right to renewal. Manning contends that the restricted license permitted him to engage in earning a living in his chosen profession and must be regarded as a fundamental right, thus entitling him to an independent judgment on the evidence.

We need not determine the appropriate standard of trial court review in a decision imposing discipline upon the holder of a restricted real estate license. The standard of review is the manner in which the trial court reviews a resolution of conflicts in the evidence. ■ Where the substantial evidence standard applies the court must defer to the administrative agency's factual determinations where they are supported by substantial evidence; where the independent judgment test applies the trial court must itself weigh

the evidence. (*Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 44-45 [112 Cal.Rptr. 805, 520 P.2d 29].) The standard of review affects only the review of factual findings; it does not extend to other administrative determinations. (*Zink* v. *City of Sausalito* (1977) 70 Cal.App.3d 662, 665 [139 Cal.Rptr. 59].) Thus where the facts are not in conflict the result must be the same regardless whether the court applies a substantial evidence or an independent judgment form of review.

The trial court did not reject the commissioner's factual findings. It expressly noted that there is "very little dispute as to factual events; rather, the controversy relates to the legal import of those facts." The trial court disagreed with the commissioner's decision because it believed that under the facts presented Manning and Golden Chain were nothing more than selling real estate agents, and as such could not violate the Subdivided Lands Act. This was the resolution of a question of law and not a factual determination and the scope of review of factual findings is not at issue.

■ As we shall demonstrate, a real estate licensee need not be the "owner, his agent or subdivider" in order to disregard the provisions of section 11018.2. A licensee who wilfully disregards the provisions of the real estate law relating to subdivisions is properly subject to discipline by the commissioner.[4]

Section 11018.2 provides that "no person" may offer for sale subdivided land without first obtaining a public report from the commissioner. Section 11010 provides that prior to the time subdivided lands are to be offered for sale the owner, his agent, or subdivider must notify the commissioner of the intention to sell such lands. The trial court reasoned that Manning and Golden Chain were not the subdivider and therefore were not responsible under those provisions. Their involvement, however, was extensive. They negotiated the purchase of the land by Longview with full knowledge that it was to be subdivided. They lent their commission to Longview to enable it to complete the deal. They entered into an agreement for an exclusive listing for the subdivided parcels, and took exclusive listings for those parcels from Longview and its "straws." They successfully procured buyers

---

[4]We need not determine, therefore, whether as a matter of law under these undisputed facts respondents were either the "subdivider" or the agents of the owner or subdivider.

We also need not here determine whether a real estate licensee is an agent within the meaning of the Subdivided Lands Act where he engages in only an occasional or isolated transaction with regard to the subject land. In this case Manning and Golden Chain's participation was pervasive; they acted as sales agent for the subdivider in every transaction through which the land was subdivided. Their participation in the subdivision of the land was thus established despite the fact they did not actually own or hold title to any portion of the land.

for the subdivided parcels. Finally, they knew that these transactions were illegal.

A person may not assist another in violating the Subdivided Lands Act and yet escape liability under the act simply because he was not personally the owner or subdivider of the land. In *People* v. *Byers, supra,* 90 Cal.App.3d 140, it appeared that one Warren Byers had subdivided a parcel of land by "four by fouring." Defendant Herbert Byers, the son of Warren, worked with his father and showed the land to prospective purchasers. Defendant Edmundson allowed his name to be used as a grantor. Defendant Higgins signed deeds showing her to be the owner of some of the parcels. Defendants Herbert Byers, Edmundson and Higgins were convicted of violations of the Subdivided Lands Act and on appeal contended, among other things, that their participation did not render them guilty of violating the act. We rejected the contention, stating: "A person who assists in making sales without conforming to the statute prohibiting such conduct may be found guilty of violating that statute regardless of a belief that assistance in such sales is lawful." (*Id.,* at p. 150, citations omitted.) In such a case the defendant is guilty of aiding and abetting the violation of the act. (*Ibid.*; see also *People* v. *Rubens* (1936) 11 Cal.App.2d 576, 584-585 [54 P.2d 98].)

It is conceded by all concerned that no notice was ever given the commissioner of an intent to sell subdivided land and no public report was obtained. (§§ 11010, 11018.2.) Manning and Golden Chain contend, and the trial court agreed, that they were not responsible for notifying the commissioner or for obtaining the public report. Even assuming that respondents had no such obligation, the record establishes that it was Manning and Golden Chain's own personal violation of provisions of the Subdivided Lands Act which enabled O'Ban and Longview to successfully evade the provisions of the act. Once a public report is obtained pursuant to section 11018.2, the obligation to prospective purchasers does not cease. Pursuant to section 11018.1, a copy of the public report must be given to prospective purchasers prior to the execution of a binding contract or agreement. In order to implement this provision the real estate commissioner promulgated a regulation which forbids the acceptance of an offer or deposit until the prospective purchaser has been given an opportunity to read the public report and his receipt has been taken. (former Cal. Admin. Code, tit. 10, § 2795, the provisions of which are now contained in § 2794.) In *Stillman Pond, Inc.* v. *Watson* (1953) 115 Cal.App.2d 440, at pages 446-449 [252 P.2d 717], the Court of Appeal held that the failure of a real estate salesman to give a prospective purchaser a copy of the public report is a cause for discipline against the salesman. The licensees in that case were expressly found not to have been the owners of the subdivided land, and their licenses

were revoked for, among other things, negotiating sales of the land without giving prospective purchasers a copy of the public report. (*Ibid.*) Like the agents in *Stillman Pond, Inc.* v. *Watson, supra,* Manning and Golden Chain were extensively involved in the subdivision of the land and failed to provide prospective purchasers with a public report, which, of course, they knew had not been obtained. Their failure was a primary reason that O'Ban and Longview were able to evade the Subdivided Lands Act, and that failure rendered them liable as aiders and abettors of O'Ban and Longview.

Finally, it is clear that a real estate licensee need not be criminally liable for a violation of the Subdivided Lands Act in order to subject to discipline. The Subdivided Lands Act contains numerous provisions regarding the subdivision and sale of subdivided lands. Violation of some but not all of those provisions may result in criminal penalties. (§ 11023.) Violation of some but not all of the provisions may result in civil penalties. (§ 11029.1.) And some violations may result in both criminal and civil penalties. (§§ 11023, 11029.1.) A real estate license may be suspended or revoked, however, whenever the licensee wilfully disregards or violates any of the provisions of the act, or any of the rules and regulations of the commissioner for the administration and enforcement of the act. (§ 10177, subd. (d).)

In *Parkman* v. *Savage* (1964) 227 Cal.App.2d 436 [38 Cal.Rptr. 664], a real estate broker arranged a sale of property from a probate estate to the executor of the estate through the use of a "dummy" in order to evade Probate Code section 583, which forbids such a transaction. Section 583 had been judicially construed to render such a transaction not void, but only voidable at the behest of those interested in the estate. The broker who arranged the transaction contended that she should not be subject to discipline because the heirs approved of the transaction, and it was therefore not illegal or void. The Court of Appeal upheld the revocation of the broker's license, reasoning that the purpose of a disciplinary proceeding is the protection of the public from the unethical or dishonest conduct of a real estate agent and it is not controlling that the "victim" suffers no harm. ■ "It therefore appears that a real estate broker who arranges a transaction in violation of the law may be disciplined by the Real Estate Commissioner, regardless of the fact that the illegal transaction, once consummated, is not void but only voidable. [Citation.]" (*Id.,* at p. 439.)

■ The purpose of the Subdivided Lands Act "is to protect individual members of the public who purchase lots or homes from subdividers and to make sure that full information will be given to all purchasers concerning public utility facilities and other essential facts with reference to the land."

(*Westbrook* v. *Summerfield, Roberts etc., Inc.* (1957) 154 Cal.App.2d 761, 766 [316 P.2d 691].) The law seeks to prevent fraud and sharp practices in a type of real estate transaction which is peculiarly open to such abuses. (*People* v. *Byers, supra,* 90 Cal.App.3d at p. 148.) Section 10177, subdivision (d), is designed "to protect the public not only from conniving real estate salesmen but also from the uninformed, negligent, or unknowledgeable salesman." (*Handeland* v. *Department of Real Estate* (1976) 58 Cal.App.3d 513, 518 [129 Cal.Rptr. 810].) An interpretation of section 10177, subdivision (d) which would impose discipline upon a real estate licensee where the Subdivided Lands Act is violated only if he was in fact the owner, the agent or the subdivider would effectively emasculate the law. Where, as here, the uncontroverted facts establish that the real estate licensees acted in total and wilful disregard of the provisions of the Subdivided Lands Act, a cause for discipline is established. We do not regard it as prejudicial that the commissioner summarized their conduct as a "violation" of the act rather than wilful disregard thereof, for on the facts established the basis for discipline cannot be denied.

We conclude that cause for discipline was established against Manning and Golden Chain under section 10177, subdivision (d), both for violations of the Subdivided Lands Act, and for wilful disregard of the act. The trial court's judgment must therefore be reversed as to Manning and Golden Chain. Since the judgment with regard to Milner was based entirely upon the trial court's conclusion with regard to Manning and Golden Chain, that portion of the judgment must also be reversed.

The judgment is reversed and the cause remanded to the trial court with directions to enter new judgment denying the peremptory writ of mandate.

Evans, Acting P. J., and Dawson, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.