Filed 9/25/15  P. v. Vanis CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062625 |
| v. | (Super.Ct.No. FMB1300441) |
| JOHN CHARLES VANIS, JR., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Bert L. Swift, Judge.  (Retired judge of the San Bernardino Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Sylvia Whatley Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Arlene A. Sevidal and Christen Somerville, Deputy Attorneys General, for Plaintiff and Respondent.

1

Police officers found defendant John Charles Vanis, Jr. in a garage where marijuana was being grown.  At the time, he admitted that he had made cuttings from several plants and had placed the cuttings in a growing medium.  At trial, however, he denied this.  He also testified that he thought the growing operation was legal because it was conducted by a collective.

After 36 minutes of deliberations, a jury found defendant guilty of unlawful cultivation of marijuana.  (Health & Saf. Code, § 11358.)  He was placed on supervised probation for three years, on conditions including a term of 60 days in jail.

Defendant now contends that the trial court erred by instructing that a mistake of law is not a defense.  He also contends that it erred by instructing that a mistake of fact is not a defense unless it is reasonable.  We find no prejudicial error.  Accordingly, we will affirm.

I

FACTUAL BACKGROUND

A.     *Prosecution Evidence*.

On September 18, 2013, police officers executed a search warrant at the home of one John Zeising in Yucca Valley.  They found Zeising, defendant and a third man in a detached garage.  Also in the garage, there were trays of marijuana plants, grow lights, a watering system, and air blowers.  Defendant was standing in a walkway between two rows of trays.  There was nothing in his hands.  However, four or five feet away, there was a tray with about 30 rock wool cubes containing marijuana clippings.

2

After defendant was arrested, he waived his *Miranda* rights and agreed to be interviewed. The entire interview was recorded and played for the jury.

In the interview, defendant said he was there to help Zeising trim some marijuana plants to make clones. He added, "Which I thought was totally legal. . . . I guess I'm wrong." "[Zeising] was showing me how to do it. I've never done it before. . . . I just wanted to learn." He stated, "I got here probably 15 minutes before you guys [got] here and trimmed up some little plants and stuck them in . . . cubes."

Defendant assumed that Zeising would give him a "little" marijuana for "coming over . . . and helping[.]"

Defendant had a medical marijuana card, but he was not sure whether it was valid or expired. He admitted that he was not a member of any collective.

B. *Defense Evidence*.

On September 18, 2013, and also at the time of trial, defendant had a valid medical marijuana card. He understood that he was allowed to grow marijuana at his home for his own personal use.

Zeising told defendant that his growing operation was legal because it was for a collective called Desert Opus Cooperative. A month or two earlier, he had asked defendant to join his collective. He had shown defendant two or three inches of paperwork, including articles of incorporation, relating to the collective. Defendant had said he would think about it.

3

On the morning of the search, Zeising told defendant that he was going to clone some marijuana plants. Defendant went over so he could learn how to do it. He arrived late; Zeising was already "pretty much done" with the cloning. However, "he showed [defendant] how he did one . . . ."

Defendant denied personally trimming or clipping any plants, using any rooting solution, or placing any cuttings into cubes. When asked what he meant when he said, in his recorded statement, that he had trimmed some plants and stuck them in cubes, he responded: "I don't think I said that, but if I did, I must have been nervous."

Defendant admitted again that he was not a member of any collective.

II

JURY INSTRUCTIONS ON MISTAKE OF LAW AND MISTAKE OF FACT

Defendant contends that the jury instructions regarding mistake of law and mistake of fact were erroneous.

A.     *Additional Factual and Procedural Background*.

Defense counsel requested CALCRIM No. 3406 (Mistake of Fact) and No. 3407 (Mistake of Law). The prosecutor objected to the mistake of fact instruction, arguing that defendant's belief that the growing operation was legal was a mistake of law, not a mistake of fact.

Initially, the trial court refused to give a mistake of fact instruction, because it found insufficient evidence of a mistake of fact, as opposed to a mistake of law.

4

However, after an unreported discussion in chambers and after further research, it agreed to give both instructions.

Thus, the jury was instructed:[1]

"The defendant is not guilty of cultivation of marijuana if he did not have the intent or mental state required to commit the crime because he *reasonably* did not know, in [*sic*] fact, or *reasonably mistakenly* [*sic*] believed a fact.

"If [the] defendant's conduct would have been lawful under that facts as he *reasonably* believed them to be, he did not commit cultivation of marijuana.

"If you find that the defendant believed that [*sic*] Mr. Z[ei]sing's statement that it was a collective *and if you find that belief was reasonable*, he did not have a specific [*sic*] or mental state required for the cultivation of marijuana, . . . you must find the defendant not guilty of that crime." (Italics added.)[2] (CALCRIM No. 3406.)

"It is not a defense to the crimes of unlawfully planting, cultivating, harvesting, drying and processed [*sic*] marijuana that the defendant did not know he was breaking the law or that he believed that his act was lawful." (CALCRIM No. 3407.)

---

**1** As indicated by "*sic*" below, the trial court misread the instructions in various minor respects. Defendant does not claim that this was error.

**2** In the standard form version of CALCRIM No. 3406, the italicized words are in brackets. The Bench Notes to CALCRIM No. 3406 provide: "If the mental state element at issue is either specific criminal intent or knowledge, do not use the bracketed language requiring the belief to be reasonable. [Citations.]" The trial court chose to include the italicized language without any discussion; counsel did not object.

5

The trial court also gave aiding and abetting instructions. (CALCRIM Nos. 400 & 401.) Thus, among other things, it instructed: "Someone aids and abets a crime if he knows of the perpetrator's unlawful purpose, and he specifically intends to, and does, in fact, aid, facilitate, promote, encourage, instigate [*sic*] the perpetrator's commission of that crime."

B.     *Discussion.*

1.     *CALCRIM No. 3407 – Mistake of Law.*

Defendant argues that, to the extent that he was prosecuted on an aiding and abetting theory, CALCRIM No. 3407 was erroneous and in conflict with CALCRIM No. 3406.

We begin with "[t]he ancient maxim . . . '*ignorantia facti excusat, ignorantia juris non excusat*.' Ignorance of facts excuses, ignorance of the law does not excuse." (*Stark v. Superior Court* (2011) 52 Cal.4th 368, 396.)

"In determining whether a defendant's mistaken belief disproves criminal intent, the courts have drawn a distinction between mistakes of fact and mistakes of law. [Citation.] While a mistake of fact usually is a defense, a mistake of law usually is not. . . . '[I]n the absence of specific language to the contrary, ignorance of a law is not a defense to a charge of its violation.' [Citation.] 'If the act itself is punishable when knowingly done, it is immaterial that the defendant thought it was lawful.' [Citation.]" (*People v. Meneses* (2008) 165 Cal.App.4th 1648, 1661-1662.)

6

Admittedly, there are exceptions. "There are a number of circumstances . . . in which violation of a penal statute is premised on the violator's harboring a particular mental state with respect to the *nonpenal* legal status of a person, thing, or action. In such cases, the principle is 'firmly established that defendant is not guilty if the offense charged requires any special mental element, such as that the prohibited act be committed knowingly, fraudulently, corruptly, maliciously or *wilfully*, and this element of the crime was lacking because of some mistake of nonpenal law.' [Citation.] . . . [But] the mistake must be one of *nonpenal* law. [Citation.] Thus, a taxpayer may defend against a [tax fraud] charge on the basis, for example, that he mistakenly believed certain deductions were proper under the tax laws, but not on the basis that he was unaware it was a crime to lie on one's tax return." (*People v. Hagen* (1998) 19 Cal.4th 652, 660, fn. 4.)

In addition, "[t]here are rare instances where ignorance that a penal law prohibits one's conduct does provide a defense. Those instances include crimes punishing the failure to act (rather than an affirmative act) and certain conspiracies. . . . In cases involving a mere failure to act, the defendant must know of the duty to act to be culpable. [Citations.]" (*People v. Meneses*, *supra*, 165 Cal.App.4th at p. 1663.)

"Ignorance that a penal law prohibits one's conduct may also provide a defense where one is charged with conspiracy to commit a crime that is not malum in se. [Citation.] 'The essence of the crime of conspiracy is the "evil" or "corrupt" agreement to do an unlawful act. It is the evil intent that makes a combination criminally indictable. "The association of persons with an honest intent is not conspiracy, and one of the tests

7

on a conspiracy trial is, did the accused act in ignorance without criminal intent?  In other words, did they honestly entertain a belief that they were not committing an unlawful act?"  [Citation.]'  [Citation.]  [In *People v. Marsh* (1962) 58 Cal.2d 732, i]n a prosecution for conspiracy to practice medicine without a license, [the Supreme Court held that] the trial court erred in instructing the jury that criminal intent was present even if defendants believed their conduct was lawful.  [Citation.]  However, [it] found that the error was not prejudicial because the evidence showed defendants knew it was unlawful to practice medicine without a license.  [Citation.]"  (*People v. Meneses*, *supra*, 165 Cal.App.4th at p. 1663.)

Here, defendant's asserted mistake was with respect to a penal law — i.e., that the growing operation did not violate the criminal laws.  He was not accused of any crime involving failure to act.  He also was not accused of conspiracy.  He notes, however, that aiding and abetting requires the "know[ledge] of the perpetrator's *unlawful purpose* and . . . [the] specifically inten[t] to . . . aid, facilitate, promote, encourage, or instigate the perpetrator's commission of *that crime*."  (CALCRIM No. 401, italics added; see also *People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1227.)  He concludes that aiding and abetting requires the specific intent to break the law.  Thus, essentially, he is attempting to extend the exception for conspiracy cases to aiding and abetting cases.

Significantly, defendant does not cite a single case holding that an aider and abettor must know that the perpetrator's unlawful act is, in fact, unlawful.  Unlike

8

conspiracy,[3] aiding and abetting has never been held to require the intent to break the law. Rather, the required knowledge of the perpetrator's "unlawful purpose" and the required intent to aid "that crime" both refer to the act (1) that the perpetrator intends to commit and does commit and (2) that happens to be unlawful. Just like the perpetrator, the aider and abettor can be guilty without knowing that the perpetrator's act breaks any law.

For example, in *People v. Byers* (1979) 90 Cal.App.3d 140, defendant Higgins was found guilty of criminal violations of the Subdivided Lands Act on the theory that she aided and abetted violations perpetrated by defendant Byers. (*Id.* at pp. 145, 150.) The court held that "[i]gnorance of the Subdivided Lands Act is not a defense to prosecution for violating the Act. [Citation.]" (*Id.* at p. 150.) "Although we concede Higgins may have naively concluded that she was not violating the law, she nevertheless voluntarily assisted Byers." (*Id.* at p. 151.)

*People v. Costa* (1991) 1 Cal.App.4th 1201 is to similar effect. There, chemicals and equipment for manufacturing methamphetamine were found in defendant David Costa's garage. (*Id.* at p. 1205.) Costa testified that he let a neighbor named Wolden

---

**3**     The on-going vitality of *Marsh* — and hence of the conspiracy exception noted in *Meneses* — may be questioned. *Marsh* relied on a line of cases, many of them from New York, going back to *People v. Powell* (1875) 63 N.Y. 88. (*People v. Marsh*, *supra*, 58 Cal.2d at pp. 743-744.) The federal courts and the American Law Institute have all rejected *Powell*. (*United States v. Cohen* (2d Cir. 2001) 260 F.3d 68, 71-73.) *Marsh*, however, remains controlling authority in California. (See, e.g., *People v. Urziceanu* (2005) 132 Cal.App.4th 747, 775-779 [following *Marsh* and applying conspiracy exception].)

9

manufacture methamphetamine in his garage because he believed that Wolden was a police informant and hence that Wolden was not doing anything illegal. (*Id*. at pp. 1209-1210.) Nevertheless, Costa was found guilty of manufacturing amphetamine. (*Id*. at p. 1204.)

On appeal, Costa argued that the trial court erred by failing to instruct that "if [he] mistakenly but reasonably believed [he was] helping an agent of the police, [he] could be found not guilty." (*People v. Costa*, *supra*, 1 Cal.App.4th at p. 1208.) He argued that "[b]ecause an aider and abettor's liability is vicarious, . . . his culpability 'necessarily depends on the commission of [the underlying crime] by the perpetrator.' [Citation.]" (*Id*. at p. 1211.)

As the appellate court noted, Health and Safety Code "[s]ection 11367 provides 'All duly authorized peace officers, while investigating violations of this division in performance of their official duties, and any person working under their immediate direction, supervision or instruction, are immune from prosecution under this division.'" (*People v. Costa*, *supra*, 1 Cal.App.4th at p. 1210.) The court concluded that, even if Wolden was a police informant, this section did not provide immunity to a person who assists an informant. (*Id*. at p. 1211.) Costa's belief that he was not doing anything illegal was a mistake of law, not a mistake of fact, and therefore not a defense. (*Id*. at pp. 1211-1212.)

In sum, then, regardless of whether defendant was prosecuted as a perpetrator or as an aider and abettor, the instruction that a mistake of law is not a defense was correct.

10

### 2. *CALCRIM No. 3406 – Mistake of Fact.*

Defendant also argues that, to the extent that he was prosecuted on an aiding and abetting theory, the version of CALCRIM No. 3406 that the trial court gave, which required that a mistake of fact must be reasonable in order to constitute a defense, was erroneous.

Actually, defendant was not entitled to any mistake of fact instruction whatsoever, because there was insufficient evidence of any mistake of fact.

"'"A "mistake of fact" is where a person understands the facts to be other than they are; whereas a "mistake of law" is where a person knows the facts as they really are, but has a mistaken belief as to the legal consequences of those facts.' [Citation.]" (*People v. LaMarr* (1942) 20 Cal.2d 705, 710.)

As the prosecutor argued below, defendant did not claim that there was any particular relevant fact that he was mistaken about. He merely testified that he believed that Zeising's operation was legal because it was conducted by a collective. This was a mistake of law. [4]

In *People v. Young* (2001) 92 Cal.App.4th 229, the defendant was charged with transportation of marijuana. (*Id*. at p. 231.) There was evidence that he believed he was legally allowed to transport marijuana under the Compassionate Use Act (Health & Saf.

---

[4] It is conceivable that defendant was not mistaken on this point — i.e., that Zeising *was* cultivating legally on behalf of a legal collective. Even if so, for the reasons discussed below, defendant was mistaken about whether his own conduct was legal.

11

Code, § 11362.5) (CUA). (*Young*, *supra*, at p. 232.) On appeal, he argued that the trial court erred by failing to give a mistake of fact instruction. (*Id*. at p. 233.) The court held that, because the CUA provided a defense to a charge of possession or cultivation of marijuana but not to a charge of transportation of marijuana, the defendant's claimed belief was a mistake of law, not a mistake of fact. (*Id*. at pp. 235-237.)

Defendant attempts to distinguish *Young* on the ground that he *was* charged with cultivation. Even so, much as in *Young*, the facts as he understood them did not amount to a defense under the CUA. The CUA provides that it is an affirmative defense that the defendant cultivated the marijuana for personal medical purposes on the recommendation or approval of a physician. (Health & Saf. Code, § 11362.5, subd. (d).) It does not deal with cultivation of marijuana by a collective.

While defendant did claim to have a medical marijuana card, he did not claim that he was cultivating the marijuana for his own personal medical use. The evidence indicated that he was cultivating it for use by Zeising and Zeising's collective; true, he was hoping that Zeising would give him some marijuana in exchange for his help, but that would be marijuana that the collective had cultivated. (See *People v. Urziceanu, supra,* 132 Cal.App.4th at p. 768 [CUA "was designed for a single patient to grow or possess his or her own marijuana"; it does not authorize patents and caregivers to "pool talents, efforts, and money to create a stockpile of marijuana that is to be collectively distributed"].) The CUA simply did not apply to these facts.

Defendant does not so much as mention the Medical Marijuana Program Act (Health & Saf. Code, § 11362.7 et seq.) (MMPA). Thus, he has forfeited any reliance on it. If only out of an excess of caution, however, we note that, as with the CUA, defendant also did not claim to be mistaken as to any fact that would have afforded him a potential defense under the MMPA. The MMPA provides that it is not a crime for qualified patients to "associate . . . in order collectively or cooperatively to cultivate marijuana for medical purposes . . . ." (Health & Saf. Code, § 11362.775.) "The MMPA provides a defense when a defendant shows that members of the collective or cooperative: '(1) are qualified patients who have been prescribed marijuana for medicinal purposes, (2) collectively associate to cultivate marijuana, and (3) are not engaged in a profit-making enterprise.' [Citation.]" (*People v. Baniani* (2014) 229 Cal.App.4th 45, 59.) By definition, however, a nonmember of the collective cannot use the MMPA as a defense. If defendant believed otherwise, that was a mistake of law.

Thus, the trial court made the right ruling at first, when it refused to give a mistake of fact instruction. It erred when it reconsidered and determined to give such an instruction. However, the error could not possibly have been prejudicial, under any standard, because the instruction merely allowed the jury to find defendant not guilty on an inapplicable theory. For the same reason, the fact that the instruction limited the defense to a *reasonable* mistake could not have been prejudicial.

III

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ _____
P. J.


We concur:

MILLER _____
J.

CODRINGTON _____
J.

14