Filed 2/14/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HERIBERTO PEREZ et al., | H044364 |
| Plaintiffs and Appellants, | (Monterey County Super. Ct. No. M131362) |
| v. | |
| COUNTY OF MONTEREY et al., | |
| Defendants and Respondents. | |

Plaintiffs Heriberto Perez and Miguel Angel Reyes Robles appeal a defense judgment in their action for declaratory relief against the County of Monterey. Plaintiffs sought to invalidate as unconstitutional a county ordinance limiting the number of roosters that can be kept on a property without a permit. We agree with the trial court that the ordinance does not violate the Constitution and will therefore affirm the judgment.

The challenged ordinance provides that no one may keep more than four roosters on a single property without a rooster keeping operation permit. (Monterey County Ordinance No. 5249 added Chapter 8.50 to Title 8 of the Monterey County Code; unspecified citations are to this code.) A permit can be obtained by application to the county Animal Control Officer. (§ 8.50.040(A).) The application must include a plan describing the "method and frequency of manure and other solid waste removal," and "such other information that the Animal Control Officer may deem necessary to decide on the issuance of the permit." (§ 8.50.040(C)(3)-(4).) A permit cannot be issued to anyone who has a criminal conviction for illegal cockfighting or other crime of animal cruelty. (§ 8.50.060(F)(1).) And permitted rooster keeping operations must comply with

certain minimum standards, such as maintaining structurally sound pens that protect roosters from cold and are properly cleaned and ventilated. (§§ 8.50.080(B), 8.50.090(C)(1)(a)-(b).) The ordinance includes four exemptions from the permit requirement: for poultry operations (defined as raising more than 200 fowl for the primary purpose of producing eggs or meat for sale); poultry hobbyists (a member of a recognized organization that promotes the breeding of poultry for show or sale); minors who keep roosters for an educational purpose; and minors who keep roosters for a Future Farmers of America project or 4-H project. (§§ 8.04.010, 8.50.110.)

Plaintiffs sued to challenge the validity of the rooster keeping ordinance, seeking a declaratory judgment that the law is unconstitutional. The complaint also alleged causes of action for damages based on civil rights violations, but plaintiffs agreed to limit the scope of their suit to the issue of whether the ordinance is valid on its face. Accordingly, no evidence was introduced at trial other than the text of the ordinance and some related legislative documents. The trial court found that the ordinance does not violate the constitution and entered judgment for the County.

### STANDARD OF REVIEW

"A facial challenge to the constitutional validity of a statute or ordinance considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) To succeed on a facial challenge, a plaintiff must show that the law in question could *never* be applied in a constitutional manner; it is not enough to show that the law would be unconstitutional under some circumstances. (*Ibid.*) We use our independent judgment to decide whether the challenged law is constitutional. (*Vergara v. State of California* (2016) 246 Cal.App.4th 619, 628.)

### CONSTITUTIONAL CHALLENGES

Plaintiffs challenge the ordinance on a variety of constitutional grounds. They argue it (1) takes property without compensation in violation of the Fifth Amendment to

2

the United States Constitution; (2) infringes on Congress' authority to regulate interstate commerce; (3) violates the Equal Protection clause of the Fourteenth Amendment to the United States Constitution; (4) is a prohibited bill of attainder; and (5) violates the rights to privacy and to possess property guaranteed by the California Constitution. As we will explain, the arguments lack merit.

### 1. Fifth Amendment Taking

The Fifth Amendment prohibits the government from taking private property for public use without paying the owner fair compensation. (*Palazzolo v. Rhode Island* (2001) 533 U.S. 606, 617.) That prohibition applies to both real and personal property. (*Horne v. Dep't. of Agriculture* (2015) ___ U.S. ___ , 135 S.Ct. 2419, 2426 (*Horne*).) And it applies not only to a "taking" as that term is commonly understood—a direct appropriation of property—but also to situations where a government regulation goes so far as to deprive the owner of all economically beneficial or productive use of the property. (*Id.* at p. 2427.)

Plaintiffs allege in their complaint that the rooster keeping ordinance is a regulatory taking, one that deprives them of all beneficial use of their property. The complaint expressly frames the taking claim as an "as applied" challenge: it alleges that the way the ordinance applies to plaintiffs' property results in a regulatory taking in violation of the Fifth Amendment. When plaintiffs agreed to limit the scope of the issues tried to solely whether the ordinance is valid on its face (and accordingly did not present evidence of how the ordinance affected them) it was fatal to their regulatory taking challenge. That is because a *regulatory* taking claim—in contrast to a physical occupation or direct appropriation of property—requires evidence of how the regulation affects the property in question. As the Supreme Court has instructed, determining whether a statute constitutes a regulatory taking requires "an 'ad hoc' factual inquiry," necessitating the consideration of "factors such as the economic impact of the regulation,

3

its interference with reasonable investment-backed expectations, and the character of the government action." (*Horne*, *supra*, ___ U.S. ___ , 135 S.Ct. 2419, 2427.) But when a statute is challenged on its face, we consider only the text of the statute itself and not any other evidence. (And the record here contains no evidence for us to consider, since plaintiffs pursued only the facial challenge in the trial court.) As there is no evidence on which to evaluate the economic impact of the regulation or the level of its interference with reasonable investment-backed expectations, plaintiffs' regulatory taking claim necessarily fails.

There is also no evidence regarding whether either plaintiff is eligible for a rooster keeping permit, has been granted or denied one, or has even applied for one. The extent to which the ordinance affects plaintiffs depends on whether they have a rooster keeping permit. Without evidence on that point, we are further unable to determine whether a regulatory taking has occurred. (See *Williamson County Regional Planning Comm'n v. Hamilton Bank of Johnson City* (1985) 473 U.S. 172, 191 [the relevant considerations "simply cannot be evaluated until the administrative agency has arrived at a final, definitive position regarding how it will apply the regulations at issue to the particular land in question."].)

### 2. Interstate Commerce

The Commerce Clause gives Congress the power to regulate commerce between the States. (U.S. Const., art. I, § 8, cl. 3.) " 'This affirmative grant of authority to Congress also encompasses an implicit or "dormant" limitation on the authority of the States to enact legislation affecting interstate commerce.' " (*Ferguson v. Friendfinders, Inc.* (2002) 94 Cal.App.4th 1255, 1261.) A local regulation violates the Commerce Clause if it either discriminates against interstate commerce or "imposes a burden on interstate commerce that is 'clearly excessive in relation to the putative local benefits.' " (*C & A Carbone, Inc. v. Clarkstown* (1994) 511 U.S. 383, 390.) A regulation that

4

discriminates against interstate commerce is per se invalid, unless there are no other means to achieve a legitimate local interest. A non-discriminatory regulation, on the other hand, requires a balancing test—a regulation that serves an important local interest will be upheld unless the benefits of the regulation are clearly outweighed by the burden imposed on interstate commerce. (*Id.* at pp. 390–392.)

Plaintiffs assert the rooster keeping ordinance imposes a burden on interstate commerce. The burden, as they describe it, is that, "The ordinance forces rooster owners to immediately divest themselves [] of all but four of their roosters … . A major portion of the roosters[] sold will likely be interstate commerce." To begin with, plaintiffs do not accurately characterize what the ordinance requires—it does not force all rooster owners to "immediately divest" themselves of all but four roosters; it merely requires a permit to keep more than four roosters on a single property. Plaintiffs have provided no evidence to support their assertion that the ordinance will result in roosters being sold, nor have they provided evidence of how that would affect interstate commerce. Plaintiffs therefore are unable to show that the burden imposed on interstate commerce outweighs the benefits of the regulation, and their Commerce Clause challenge fails.

### 3. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." (*Cleburne v. Cleburne Living Center, Inc.* (1985) 473 U.S. 432, 439.) Plaintiffs contend the ordinance violates the equal protection clause because it treats minors more favorably than adults, in that there are two exceptions to the permit requirement which apply only to minors: minors keeping roosters for an educational purpose, and minors keeping roosters for a Future Farmers of America or 4-H project. But "age is not a suspect classification under the Equal Protection Clause," so laws "may discriminate on the basis

5

of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest." (*Kimel v. Florida Bd. of Regents* (2000) 528 U.S. 62, 83.) A law that discriminates on the basis of age is reviewed for a rational basis and will not be overturned unless the differential treatment " 'is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.' " (*Id*. at p. 84.)

In pressing their equal protection challenge, plaintiffs correctly observe that the ordinance treats people differently based on age. But they do not articulate how the differential treatment completely fails to advance a legitimate government purpose. The ordinance includes a statement of "findings and purpose" (§ 8.50.010), explaining that the County "desires to allow the keeping of roosters in a manner that addresses the treatment of roosters and environmental and health and safety impacts of keeping roosters, while discouraging the raising of roosters for illegal purposes[,]" and "recognizes that students legitimately raise roosters for 4-H, Future Farmers of America, and other educational projects[.]" (§ 8.50.010(F)-(G).) The ordinance therefore "serves the public health, safety and welfare by establishing a comprehensive approach to the keeping of five or more roosters that balances promotion of agriculture and agricultural education with prevention of operations that are unsanitary, inhumane, environmentally damaging, and potentially conducive of illegal conduct." (§ 8.050.010(J).) In our view, the County's stated objectives are legitimate and the exceptions for minors correspond rationally to achieving those ends. We therefore reject plaintiffs' equal protection challenge.

### 4. Bill of Attainder

Bills of attainder are prohibited by the United States Constitution. (U.S. Const., art. I, § 10.) A bill of attainder is an ancient practice once engaged in by the Parliament of England to punish without trial " 'specifically designated persons or groups.' "

6

(*Selective Service v. Minnesota Public Interest Research Group* (1984) 468 U.S. 841, 847.) "Historically, bills of attainder generally named the persons to be punished. However, '[t]he singling out of an individual for legislatively prescribed punishment constitutes an attainder whether the individual is called by name or described in terms of conduct which, because it is past conduct, operates only as a designation of particular persons.' " (*Ibid.*) Of course, "[h]owever expansive the prohibition against bills of attainder, it surely was not intended to serve as a variant of the equal protection doctrine, invalidating every Act of Congress or the States that legislatively burdens some persons or groups but not all other plausible individuals." (*Nixon v. Administrator of General Services* (1977) 433 U.S. 425, 471.)

That the ordinance in question does not burden all people (only those who want to keep more than four roosters on a property) does not make it a bill of attainder. The ordinance prospectively regulates the keeping of roosters. It does not single out a person or group for punishment based on conduct predating its enactment. It is therefore not a bill of attainder.

### 5. Rights to Privacy and to Possess Property

Article I, section 1 of the California Constitution states: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Plaintiffs contend the ordinance violates both the right to privacy and to possess property. Regarding the right to privacy, we note it is not absolute. (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 961.) " 'The diverse and somewhat amorphous character of the privacy right necessarily requires that privacy interests be specifically identified and carefully compared with competing or countervailing privacy and nonprivacy interests in a "balancing test." … Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion

7

is justified by a competing interest.' " (*Ibid*.)  Plaintiffs make no effort to identify a specific privacy interest implicated by the ordinance, much less explain why any purported invasion of privacy is not outweighed by the County's competing interest in establishing humane and sanitary standards for the keeping of roosters.  We perceive no violation of the constitutional right to privacy.

Regarding the right to possess property, while property ownership rights are indeed constitutionally guaranteed, they "must be subordinated to the rights of society." (*People v. Byers* (1979) 90 Cal.App.3d 140, 147.)  "It is now a fundamental axiom in the law that one may not do with his property as he pleases; his use is subject to reasonable restraints to avoid societal detriment." (*Ibid*.)  The rooster ordinance does not deprive plaintiffs of the right to own property; it regulates their use of it.  We conclude the ordinance is a valid exercise of the County's police power.  (See *Community Memorial Hospital v. County of Ventura* (1996) 50 Cal.App.4th 199, 206. ["The police power is the authority to enact laws to promote the public health, safety, morals and general welfare."].)

The judgment is affirmed.  The parties shall bear their own costs on appeal.

8

_____

Grover, J.

**WE CONCUR:**

_____

Greenwood, P. J.

_____

Danner, J.

**H044364 -** *Perez et al. v. County of Monterey et al.*

| | |
|---|---|
| Trial Court: | Monterey County Superior Court<br>Case No. M131362 |
| Trial Judge: | Hon. Thomas W. Wills |
| Counsel for Plaintiffs/Appellants<br>Heriberto Perez and Miguel Angel Reyes<br>Robles: | Lynne Marie Patterson |
| Counsel for Defendants/Respondents<br>County of Monterey and County of<br>Monterey Board of Supervisors: | Charles J. McKee, County Counsel<br>Michael J. Whilden, Deputy County Counsel<br>Office of the Monterey County Counsel |