Filed 8/26/24 Corn v. State of California CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| GERALD CORN et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>STATE OF CALIFORNIA et al.,<br><br>    Defendants and Respondents. | B327498<br><br>(Los Angeles County Super. Ct. No. 21STCP00705) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Richard L. Fruin, Judge. Affirmed.

Gerald Corn and Junnie Verceles, in pro per., for Plaintiffs and Appellants.

Ron Bonta, Attorney General of California, Cheryl L. Feiner, Senior Assistant Attorney General, Gregory D. Brown and Colin D. Schoell, Deputy Attorneys General, for Defendants and Respondents.

## INTRODUCTION

Plaintiff Gerald Corn, a teacher in the Los Angeles Unified School District (LAUSD), and plaintiff Junnie Verceles, a former LAUSD teacher, sued the State of California and the California Commission on Teacher Credentialing (CCTC) (collectively, defendants), seeking an order declaring unconstitutional various provisions of the Education Code regarding discipline and dismissal of teachers.

Defendants demurred to the operative complaint on several grounds, including that LAUSD, not defendants, caused the alleged harm, and the challenged statutes are constitutional as a matter of law. The trial court sustained the demurrer without leave to amend, ruling in part that plaintiffs' facial and as-applied constitutional challenges failed to state facts sufficient to state a cause of action. For the reasons discussed below, we affirm the judgment of dismissal.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     California's education system

"The California Constitution requires '[t]he Legislature [to] provide for a system of common schools.' (Cal. Const., art. IX, § 5.) Pursuant to this command, the state is obligated to provide a free public education. (*Los Angeles Unified School Dist. v. Garcia* (2013) 58 Cal.4th 175, 182.) "'[M]anagement and control of the public schools [is] a matter of state[, not local,] care and supervision. . . .'" (*Butt v. State of California* (1992) 4 Cal.4th 668, 681 (*Butt*).)." (*Vergara v. State of California* (2016) 246 Cal.App.4th 619, 628 (*Vergara*).)

"The California Constitution also provides for the incorporation and organization of school districts by the

2

Legislature. (Cal. Const., art. IX, § 14.) Local school districts, as agents of the state, are responsible for implementation of educational programs and activities. (*Ibid*.; *Butt, supra*, 4 Cal.4th 668, 681.) '[T]he Legislature has assigned much of the governance of the public schools to the local districts . . . .' (*Butt*, at p. 681.)" (*Vergara, supra*, 246 Cal.App.4th at p. 628.)

"School districts are expected to operate as 'strong, vigorous, and properly organized local school administrative units.' ([Educ. Code,] § 14000.)[1] To this end, the Legislature has granted each district (through its governing board) the power to hire teachers (§§ 44830-44834) [and] to dismiss teachers (§§ 44932-44944)." (*Vergara, supra*, 246 Cal.App.4th at p. 628.) Moreover, sections 44500 through 44508 establish the California Peer Assistance and Review Program (PAR program), to assist teachers with below satisfactory performance. The PAR program is developed and implemented in each school district by the governing board of the district and the exclusive representative of the certificated employees in the school district. (§ 44500, subd. (a).)

## II. The operative complaint

The operative second amended complaint (SAC) alleges the following. Verceles began working for LAUSD in 1998, and was issued a teaching credential by the CCTC on March 30, 2010. On December 1, 2015, Verceles was removed from his teaching position and placed in reassignment at home from 2015 to 2018 while LAUSD conducted an investigation for alleged misconduct. In March 2018, LAUSD dismissed Verceles from employment

---

1    All further undesignated statutory references are to the Education Code.

under sections 44932 and 44939.[2] Verceles "declined a dismissal hearing under the Office of Administrative [Hearings] (OAH) claiming that the OAH was a biased venue that does not abide by the Evidence Code. Verceles believed he would not get a fair hearing in the OAH, and instead filed a civil complaint to challenge the dismissal through [the] Superior Court."[3]

In March 2019, CCTC began an investigation into Verceles' fitness to hold a teaching credential based on his dismissal from LAUSD. Verceles was informed that CCTC would be suspending or revoking his credential pursuant to section 44421 if it found "the facts alleged in an investigative report to be true." Verceles was later directed to "report to the CCTC in Sacramento to respond to the statement of the findings of the CCTC at a Formal Review Meeting." On September 20, 2019, the CCTC found

---

2 Section 44932 states a "permanent employee shall not be dismissed except for one or more" enumerated grounds. Section 44939 provides procedural requirements for a school district administering dismissal or suspension proceedings, including that the "governing board of the school district may, if it deems that action necessary, immediately suspend the employee from his or her duties and give notice to him or her of his or her suspension, and that 30 days after service of the notice of dismissal, he or she will be dismissed, unless he or she demands a hearing."

3 Verceles and Corn filed separate lawsuits against LAUSD for alleged violations of the Fair Employment and Housing Act. (See *Verceles v. Los Angeles Unified School District* (L.A. County, 2019, No. 19STCV09932) and *Corn v. Los Angeles Unified School District* (L.A. County, 2022, No. 22STCV12911).) According to the parties, at least as of the time of appellate briefing in this case, those actions were pending.

4

probable cause to issue discipline and suspended Verceles' credential for 14 days under section 44421.

Corn began working for LAUSD in 1997. In August 2018, after receiving a Below Standards Evaluation (BSE), Corn was placed in the PAR program. In the PAR Program, when a teacher receives two consecutive BSE's, the teacher is recommended for dismissal based on incompetency. Corn alleges that the "Education Codes [*sic*], which codifies the operation of the PAR [p]rogram do [*sic*] not apply or follow the Evidence Codes [*sic*]. Therefore, when [he] was evaluated on his teaching, his administrator used unverified information along with arbitrary standards to determine [his] performance level . . . . This allowed [his] administrator to write anything derogatory to lead him to a program, namely PAR to question his fitness to teach and eventually lead him to dismissal from his teaching position." He further alleges: "The trauma of receiving two unfounded consecutive BSE's and a warning of an imminent third below standard evaluation from his supervisor during his district approved sick leave, caused [him] so much stress that he was unable to return to his vacant position as an Honors History teacher."

Plaintiffs filed the SAC after the court sustained defendants' demurrer to plaintiffs' first amended complaint, with leave to amend. The SAC seeks a judgment declaring 13 statutes "unconstitutional and unlawful." It is styled as eight separate causes of action, some of which appear to be duplicative: (1) section 44929.21[establishing when an employee becomes a permanent employee of a school district] is unconstitutional; (2) sections 44932 [establishing when a school district may dismiss or suspend a permanent employee] and 44939

5

[establishing procedural requirements for a school district in administering dismissal or suspension proceedings] are unconstitutional; (3) section 44939 is unconstitutional; (4) sections 44500-44505 [establishing the PAR program] are unconstitutional; (5) section 44421 [establishing grounds on which the CCTC shall revoke or suspend a teacher's credential] is unconstitutional; (6) Government Code section 3549.1 [establishing rules concerning negotiations between public school employers and recognized or certified employee organizations] is unconstitutional; (7) Government Code section 3549 [providing that nothing in the chapter in which it falls shall be construed as making the provisions of section 923 of the Labor Code applicable to public school employees] is unconstitutional; and (8) violation of Government Code section 11135 [antidiscrimination statute].

In support of their constitutional challenges in the SAC, plaintiffs appear to rely on several different theories, including: (1) the statutes are "bill[s] of attainder[4] and/or violate the equal protection clause of the California Constitution" based on data purportedly showing a "statistical racial bias for probationary and permanent teachers for African Americans for the past 8 years"; (2) data shows teachers over the age of 45 are suspended more frequently than younger teachers; and (3) the statutes do "not [ ] abide by the Evidence Codes."

The trial court sustained the demurrer without leave to further amend. It ruled, in part, that with respect to their

---

4       "Bills of attainder are prohibited by the United States Constitution. (U.S. Const., art. I, § 10.) A bill of attainder is an ancient practice once engaged in by the Parliament of England to punish without trial "'specifically designated persons or groups.'"" (*Perez v. County of Monterey* (2019) 32 Cal.App.5th 257, 264.)

6

constitutional challenges based on facial invalidity, plaintiffs "failed to allege facts to show how the texts of the subject statutes treat similarly situate[ed] groups unequally 'either explicitly or through an inevitable and fatal conflict with the equal protection clause.' . . . Plaintiffs have continued to fail to show that these statutes designate persons or groups for punishment." Regarding plaintiffs' as-applied constitutional challenge based on their statistical analysis of disciplined teachers, the court stated that plaintiffs "do not allege: (1) that [d]efendants intentionally caused the alleged disparity through their policies; (2) that the distinctions drawn by the statute are not rationally related to a legitimate state purpose; or (3) that [d]efendants took any adverse action against [p]laintiffs under the statute." The court further explained: plaintiffs' data "focuses only on teachers who have been disciplined, not ones randomly selected from the general teacher population. . . . A differentiation based on fitness is per se reasonable, as it is rationally related to the State's interest in eliminating teachers [who] are not fit to teach." The trial court entered judgment in favor of defendants. Plaintiffs timely appealed.

## DISCUSSION

### I.    Standard of Review

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend." (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.) "'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially

7

noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.] When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. [Citation.] And when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

"We review the correctness of the trial court's action in sustaining the demurrer, not the court's statement of reasons for its action." (*Martis Camp Community Assn. v. County of Placer* (2020) 53 Cal.App.5th 569, 610.) Accordingly, "[w]e affirm the judgment if it is correct for any reason, regardless of the trial court's stated reasons." (*MKB Management, Inc. v. Melikian* (2010) 184 Cal.App.4th 796, 802.) "The burden is on the appellant to demonstrate that the trial court erred in sustaining the demurrer . . . ." (*Martis Camp Community Assn. v. County of Placer*, *supra*, 53 Cal.App.5th at p. 610.)

## II.   Analysis

On appeal, plaintiffs do not separately address the constitutionality of each challenged statute. Nor do they link their arguments to the factual allegations in the SAC. The basis for their constitutional claims, therefore, is not entirely clear. It appears, however, that plaintiffs are primarily pursuing a facial challenge to the statutes specified in the SAC by arguing that the

8

statutes governing the discipline and dismissal of teachers do not follow or "abide" by the California Evidence Code.[5]

"A facial challenge to the constitutional validity of a statute . . . considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084.) A statute is facially unconstitutional when the constitutional violation flows "inevitably" from the statute, not the actions of the people implementing it. (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 180-181.) "This can occur when (1) the text of the statute mandates the constitutional violation . . . or (2) the constitutional violation, while not mandated by the statute's text, 'inevitably' flows from the statute regardless of the actions of those administering it . . . ." (*Vergara*, *supra*, 246 Cal.App.4th at pp. 648-649.)

The challenged statutes here do not inevitably deprive teachers of their due process rights by not "abid[ing] by the

---

5    In its order sustaining defendants' demurrer to the SAC, the trial court analyzed plaintiffs' individual claims regarding the application of the statutes to their particular circumstances, and concluded LAUSD, not defendants, caused the alleged harm. According to plaintiffs, however, those claims are being litigated in their separate lawsuits against LAUSD. Plaintiffs explain: "[Plaintiffs] are suing LAUSD, aside from this lawsuit, for the discriminatory actions taken directly against them through LAUSD's enforcement of the Education Codes." We therefore limit our analysis to the constitutional challenges in the SAC, and plaintiffs' alleged claims of error on appeal (which, as far as we can tell, focus on plaintiffs' assertion that the statutes are unconstitutional because they "do not abide by the Evidence Code.").

Evidence Code." Rather, it is well settled that "[f]ormal evidentiary rules applicable in court are not required in administrative proceedings." (*Boermeester v. Carry* (2024) 100 Cal.App.5th 383, 395.) "'The essence of due process is the requirement that "a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it."''" (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 212.) The disciplinary scheme established by the Education Code provides notice and an opportunity to be heard.

For example, section 44939 provides that "[u]pon the filing of written charges, duly signed and verified by the person filing them with the governing board of a school district, or upon a written statement of charges formulated by the governing board of a school district . . . the governing board of the school district may, if it deems that action necessary, immediately suspend the employee from his or her duties and give notice to him or her of his or her suspension, and that 30 days after service of the notice of dismissal, he or she will be dismissed, unless he or she demands a hearing." (§ 44939, subd. (b).) "An employee who has been placed on suspension . . . may serve and file with the Office of Administrative Hearings a motion for immediate reversal of suspension." (§ 44939, subd. (c)(1).) The hearing on the motion must be heard no later than 30 days after the motion is filed, and the administrative law judge shall, no later than 15 days after the hearing, issue an order denying or granting the motion. (§ 44939, subd. (c)(3) & (4).) The hearing is governed by the evidentiary rules set forth in the Administrative Procedure Act. (See, e.g., Gov. Code, § 11513, subds. (a) & (b) ["[o]ral evidence

10

shall be taken only on oath or affirmation" and each party has the right to call, examine, and cross-examine witnesses].)[6]

Plaintiffs also contend the PAR program (sections 44500-44505) does not "abide by the Evidence Codes . . . making the PAR program unconstitutional." But those sections merely establish the program, which the school districts may develop and implement. Section 44500, subdivision (b) provides principles that, at a minimum, shall be included in a locally developed program, including but not limited to the following: "[p]erformance goals for an individual teacher shall be in writing, clearly stated, aligned with pupil learning . . ."; "[a]ssistance and review shall include multiple observations of a teacher during periods of classroom instruction"; "[t]he program shall have a monitoring component with a written record"; and "[t]he final evaluation of a teacher's participation in the program shall be made available for placement in the personnel file of the teacher receiving assistance." (§ 44500, subd. (b)(2),(3),(6), & (7).) Plaintiffs provide no authority for their vague contention that the PAR program must "abide by the Evidence Codes."

Plaintiffs further contend that sections 44929.21 [establishing when an employee becomes a permanent employee of a school district], 44932 [establishing when a school district may dismiss or suspend a permanent employee], and 44421 [establishing grounds on which the CCTC shall revoke or suspend a teacher's credential] "may infringe upon their rights, and these claims deserve a more thorough examination." They

---

6    As noted above, Verceles alleges in the SAC that he "declined a dismissal hearing . . . claiming that the OAH was a biased venue that does not abide by the Evidence Code."

11

argue that "defendants' assertions that these statutes are not bills of attainder or that they are facially constitutional do not definitively resolve the complex legal issues at hand. A more comprehensive evaluation is necessary to determine whether these statutes indeed pass constitutional muster." We decline plaintiffs' invitation to conduct a "comprehensive evaluation" without any cogent argument supported by legal analysis. (See, e.g., *City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286-287 ["In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"].) We likewise deem any claimed error based on the trial court's ruling that the SAC fails to state sufficient facts to support their theories that the statutes are bills of attainder or violate the equal protection clause forfeited. Plaintiffs' argument on these issues is limited to the following: "Appellants provided statistical analysis to show equal protections [*sic*] violations that was randomly selected. Data was selected over a certain period of time, with all ages. It took total number of teachers from the State, applied to all teacher [*sic*] in State that were disciplined, and discovered discipline was not random." "We . . . disregard conclusory arguments that are not supported by pertinent legal authority." (*WFG National Title Ins. Co. v. Wells Fargo Bank, N.A.* (2020) 51 Cal.App.5th 881, 894.)

In sum, we conclude plaintiffs have not met their burden to demonstrate the trial court erred by sustaining defendants'

demurrer to the SAC.[7] Nor have plaintiffs demonstrated that there is a "reasonable possibility that the defect[s] [in the pleading at issue] can be cured by amendment[.]" (*Blank v. Kirwan*, *supra*, 39 Cal.3d at p. 318.) On appeal, plaintiffs seek to amend the SAC to clarify that all references to the OAH in the SAC refer to the OAH of the CCTC (as opposed to the OAH of the LAUSD). This proposed amendment, however, would not cure the defects in the SAC (i.e., failure to state sufficient facts in support of plaintiffs' constitutional challenges to the statutes identified in the SAC). (See *Rakestraw v. California Physicians' Service* (2000) 81 Cal.App.4th 39, 43 ["a plaintiff 'must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading'"].)

---

7       Plaintiffs do not argue the trial court erred by sustaining defendants' demurrer to the causes of action based on sections of the Government Code.

## DISPOSITION

The judgment is affirmed. Defendants shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

14